# Lauman *versus* The Lebanon Valley Railroad Company.

A railroad corporation may abandon its charter, and dissolve itself, except so far as its public duties as conservators of a highway may limit this power; and the legislature may release it from this limitation, and allow a transfer of its duties to other hands.

A single stockholder has no right to object to a transfer of all the property of the corporation to another company, under the authority of an act of assembly.

But he cannot be compelled by law to accept the stock of the other company in payment for the shares held by him; and a court of equity will restrain the corporation and its officers from entering into a contract to that effect.

The dissolution of a corporation is not a corporate act, but an act of the members of the corporation; and its officers in effecting such an arrangement act as trustees of the members, not as corporate functionaries.

Under the constitution, a majority of the members of a corporation cannot be authorized to divest the interest of a dissenting stockholder, by a transfer of the whole of its property to another company, to be paid for in the shares of such other company, without first giving security for the interest of such dissenting stockholder.

IN EQUITY. Motion for special injunction.

. This was a bill for an injunction, by George M. Lauman, as well for himself as for such other stockholders of the Lebanon Valley Railroad Company, as should choose to become parties to the suit, and contribute to the expenses thereof, against The Lebanon Valley Railroad Company and its officers.

It set forth that by sundry Acts of Assembly of the Commonwealth of Pennsylvania, the Lebanon Valley Railroad Company became a corporation or body politic, with the powers therein specifically granted and none others. That in pursuance of such

powers, they had constructed and nearly completed their railroad from Reading to Harrisburg. That the subscription to their stock amounted to more than $1,000,000; and a large amount of bonds had been issued by them, under authority of law, bearing seven per cent. interest; the proceeds of which, with the subscriptions, had been employed and expended in the construction of the said railroad; and that the complainant was a stockholder and corporator thereof.

That an Act of Assembly was passed on the 5th May 1857, providing for the entire merger of the Lebanon Valley Railroad Company and of all its corporate rights, powers and privileges, into the Philadelphia and Reading Railroad Company, so that the two companies might be consolidated into one: and all the property, rights, franchises and privileges, of the Lebanon Valley Railroad Company might be transferred to and vested in the Philadelphia and Reading Railroad Company.

That the mode of effecting this merger was to be by a joint agreement of the directors or managers of each corporation, under their respective corporate seals, prescribing the terms and conditions, *and the manner of converting the capital stock of the Lebanon Valley Railroad Company into the stock of the Philadelphia and Reading Railroad Company.* That this agreement was to be submitted to the stockholders of each of the said companies, and a vote by ballot taken for the adoption or rejection of the same; *each share entitling the holder thereof to one vote; and if a majority of all the votes cast,* at each of said meetings, should be in favor of the adoption of said agreement, such fact to be certified and with a copy of the agreement filed in the office of the secretary of the Commonwealth; whereupon the Lebanon Valley Railroad Company should be deemed to have been *merged* in the Philadelphia and Reading Railroad Company.

That the directors and managers of the said companies had entered into such a joint agreement; which provided among other things, that the holders of the stock of the Lebanon Valley Railroad Company should each be entitled to one share of the stock of the Reading Railroad, for each share of the stock used by them; and the Lebanon Valley Railroad Company had called a meeting of the stockholders, for the purpose of submitting the same for their consideration, and that the Philadelphia and Reading Railroad Company owned or controlled a majority of the shares of stock of the Lebanon Valley Railroad Company. That complainant was instructed that the said Act of 5th May 1857, is contrary to the principles of natural justice, in violation of the constitution of the United States and of the constitution of Pennsylvania, and that all proceedings under it are null and void, without the unanimous consent of all the stockholders of the Lebanon

Valley Railroad Company. He thereafter prayed, that the court would decree the said act to be unconstitutional and void; that the said agreement might be cancelled, and the defendants enjoined and restrained from any further proceedings under the said act without the unanimous consent of the stockholders; and for further relief, &c.

The complainant, on filing this bill, with an affidavit of the truth of the facts therein set forth, moved for a preliminary injunction to restrain the defendants from any further proceedings under the act of 5th May 1857. This motion now came on to be heard.

*Read,* for the complainant, in support of the motion.—The court will enjoin the company and its officers from applying the corporate property to a purpose not contemplated by its charter, in violation of the rights of the complainant: *Redfield on Railways,* 621; *Pierce's Am. Railroad Law,* 85; 29 *Law Times Rep.* 187-9. The complainant cannot be compelled to assume the liabilities of a stockholder in the other company. Act 2d February 1850, *Pamph. L.* 37.

*St. G. T. Campbell* and *Meredith,* for the respondents.—Every corporation has a right, by a vote of the majority, to surrender its charter, if accepted by the granting power: Erie and North-East Railroad *v.* Casey, 2 *Casey* 287; McKenzie *v.* Sligo and Shannon Railway Company, 14 *Eng. L. and Eq.* 37; *Grant on Corporations* 306.

The opinion of the court was delivered by

Lowrie, C. J.—The Lebanon Valley Railroad Company proposes to enter into a contract of consolidation with the Philadelphia and Reading Railroad Company, and an Act of Assembly, passed last year, authorizes them to do so; but George M. Lauman, one of their stockholders, objects to the proceeding. He has brought his suit against the proper party, alleging the appropriate facts, and prays for an injunction to arrest the execution of the intention, and for such other and further relief as is proper for his case.

No one will deny that, without the authority of the legislature, neither of these companies has power to enter into such a contract; for, as corporations, their powers are strictly limited to the province marked out for them in their charters.

No one will deny that, as private corporations, either of these companies may abandon its charter, and dissolve itself; except so far as its creditors may have a right to object, and so far as its public duties, as conservators of a highway, may tend to limit its powers in this respect; and that the legislature may, at pleasure,

[Lauman v. The Lebanon Valley Railroad Company.]

release it from the limitation, and allow a transfer of its duties to other hands.

No one will deny that an association of individuals becomes a corporation, when, by authority of law, it acquires a name by which its *legal* identity can be preserved through all the changes of membership, business, constitution, and sphere of action which it may undergo, and which may entirely destroy its *actual* identity. *Such* a name is essential to corporate existence, and when it is given up, the corporation ceases to exist.

Bearing in mind these propositions, let us inquire what will be the effects of this consolidation of these two companies, as authorized and proposed.

1. The Reading company will extend its chartered rights, privileges, and duties from Reading to Harrisburg, while still preserving its name, and therefore its legal though not its actual identity.

2. The Lebanon company, that is, all its members, will pass into the Reading company, and become members thereof, and all their corporate privileges and property will become vested therein, and, by authority of law, all the liabilities of the former company will become chargeable against the latter.

3. By such an act the Lebanon company loses its actual identity, abandons its name, and therefore its legal identity and its corporate existence, and can no longer claim any legal recognition. This is called a merger of the Lebanon corporation into the other; but such a merger is a dissolution, destroying the actual identity of both, while the legal identity of one of them is preserved. As where a life estate is merged in a fee simple, one being destroyed and the other enlarged by the operation.

Now, if a legal majority of the Lebanon company agree to all this, what can a single stockholder have to say against it?

He cannot object that the supposed contract between the *government* and his corporation, involved in the grant of its charter, is violated; for both the government and the corporators are assenting to this change of its terms.

He cannot object that his company is committing a breach of its public duties, by going beyond its chartered privileges, and by abandoning its functions as sole conservators of its highway; for the legislature have allowed this. And the public claims on its permanence and identity being remitted, he cannot object to his company dissolving itself. A denial of this power would be fruitless, for the company could forfeit its charter any day, or evade the prohibition in numerous ways, one of the most efficient of which would be by a sale of the materials of its business and suspension of operations, for government would be incompetent to keep it in operation.

If the principle of the association is violated by a majority of

[Lauman *v.* The Lebanon Valley Railroad Company.]

its members, by a departure from its original purposes, or by a refusal, or voluntarily produced inability to proceed, any stockholder may treat such a matter as equivalent to a dissolution, at least as regards him, and for such a case the law provides a means of securing to him his share of the property, or its value.

It is of the nature of his contract with his associates, by which, under legislative authority, they constituted themselves into a corporation that it is dissoluble, and that, on a dissolution, the rights and property, or their legal equivalents, shall be distributed among the members, and therefore the act of dissolution does not violate the contract of association.

Then, what valid objection can a dissenting stockholder of a private corporation have to such an arrangement as the one now proposed?

He may object that it is a violation of the contract of association by which he and his associates agreed to become one corporate company for a given purpose : that he united in the association for one purpose, then agreed on, and now the majority are diverting their capital to a different purpose.   This is a *violation* of chartered contracts : not the supposed one between the government and the corporators, but the one between the corporators themselves.

He may object that his co-corporators have no power to make a new contract for him, and thereby constitute him a member of a new and different corporation ; for it is of the very nature of a contract relation that it can be instituted only by the real parties to it ; unless it be a mere constructive contract, which is only a convenient form or fiction of law, invented to enforce a corresponding legal duty.

He may object that even the legislature cannot authorize this, for by doing so, they would authorize the destruction of one private contract, and the compulsory creation of another in its stead, and would take away the remedy by due course of law, which the dissenting stockholder is entitled to, because of the departure or diversion of the association from its agreed purposes ; and would, besides this, change the essential nature of contracts, which even legislative *power* cannot do, and much less legislative authority.

He may object that, though in corporate action, after the corporation is constituted, and its province defined, the details of its business and the making of its contracts must necessarily be under the control of a majority ; yet it is of the nature of things that, in the act of constituting the corporation, and of taking stock, each man must act for himself, and therefore that he cannot, by a vote of a corporate majority of the Lebanon company, and against his consent, be constituted a member of the Reading company.

But what follows ?   Can one member of a corporation hold all

[Lauman *v.* The Lebanon Valley Railroad Company.]

his fellow-members, with their investments, to an unprofitable and impracticable enterprise, and prevent them from embarking in another that is more hopeful? No: their power of dissolution will relieve them from such an objection, and without it one member of a corporation would, under some circumstances, have an almost absolute power over the investments of all the others.

Can he object that the majority who are going into the Reading company are going to take all the property with them?

Let us notice that this property is a railroad, with its appurtenances, and that it is an indivisible unit. Therefore, on a dissolution, however brought about, the only means of distributing the joint property is to sell it and distribute the proceeds, or to allow one or more of the members to take it on paying to the others the value of their several shares, just as interests in indivisible real estate, and in ships, are divided when the owners can no longer agree to hold together.

But does it violate the private right of a dissenting stockholder, when the others, by a corporate act, unite in selling out all the property of the corporation? In relation to ordinary private corporations for mere private purposes, it will not be pretended that it does, even when such a sale is equivalent to a dissolution of the corporation, as when a manufacturing corporation sells out its establishment, and refuses to resume operations. And railroad companies go this far frequently in the effectiveness of their act, where, with the consent of the legislature, they mortgage all their property; for a mortgage involves a power of sale.

But here, the thing or consideration for which this sale is to be made is shares of stock in the Reading company, to be delivered to each member according to the number of shares now owned by him in the Lebanon company.

Now, it is plain enough that a dissenting member cannot thus be forced into a new corporation, and that his property in one corporation cannot be taken from him and the stock of another imposed upon him by way of compensation, by the act either of the legislature or of his co-corporators, or of both combined. It no doubt seemed clear to the legislature that such an arrangement would be advantageous to all the stockholders, and therefore they did not think of providing for the event of a dissent by any one of them. We cannot presume that the legislature intended to assume or exercise any unconstitutional power over private contracts, but only that, supposing that they were granting a valuable privilege, they omitted to make provision for those who should refuse to accept it. They did not decide that the new stock was equivalent to the old, and should be taken as a compensation for it, but merely acted on the supposition that it would be accepted as equal.

The efficiency of the objection to the proceeding is founded,

not so much on the want of authority in government to divest one title and substitute another, as upon the mode of doing it. The constitution requires that it shall be done only by due course of law, before the judicial tribunals, and on hearing of the parties; and in that way it is often done. In the partition of interests in real estate, ships, mercantile and manufacturing establishments, courts always proceed by divesting titles and interests of one kind, and substituting others. And this arises from the necessity of such cases. It is an inherent quality of all associated interests that they may be converted into separate interests; and if it were not so, such interests would often be worthless to some owners, because of disagreements among them which the law could not correct, and the disorders of such associations would be an incurable evil.

Does a private corporation exceed its powers when it sells out the property that is essential to its active existence?

There is no excessive exercise of power where no right is violated; and therefore we must examine if any right is violated by such an act. And this refers us to the legal relations of the corporation to others in respect of its property. It can have no relations limiting its powers in this respect, except to the grantors of its land, to the public, and to its own members. Such an act does not, in the present case, violate the terms on which the corporation holds its land; and therefore no rights of grantors are violated. The state consents to the sale, and therefore no public right is violated.

If there is anything in the relation existing between the corporation and its members that prevents the sale, then a more serious difficulty is presented; for if there is, it must be a part of the contract of association, and cannot be changed by the legislature. But is there? The charter shows the terms of the contract, and in it we discover no provision of the kind. Can we regard it as implied or involved in the nature of such a contract? We do not think so; for property in itself is essentially alienable, and the right of alienation is essential to complete ownership; and to regard corporate property as inalienable is contrary to the spirit of all *mortmain* laws. But such a sale may lay the ground for a dissolution. Suppose it does: this is no valid impediment to it, for a dissolution is not prohibited.

If, then, this corporation may sell or exchange all its property, why may it not exchange it for stock in the Reading company, and divide that among its members?

This is only another mode of presenting a question already answered; but it arises very naturally in this form, and may very well be answered as put.

The contract of consolidation is an act of dissolution in form and substance of the Lebanon company, and the corporation can-

[Lauman v. The Lebanon Valley Railroad Company.]

not, in the act of dissolution, dispose of the rights of its members. The act of dissolution, like the act of association, is not a corporate act, but an act of the members of the corporation. They may commit to their officers the business of effecting it in all its details, but they are not required to do so by the terms of their association, and in effecting such a purpose the officers would be rather trustees of the members than corporate functionaries. Then it follows, quite obviously, that no corporate act can settle the terms of dissolution, or distribute the effects among the members, and that this company cannot decide what the plaintiff shall take for his interest.

The act of dissolution works a change in the form of the interests of its members, by destroying the stock, and substituting the thing which the stock represented, that is, a legal interest in the property, and leaves the members to such a division of this. But this property is indivisible, and therefore we see no objection to the act of the legislature so far as it allows the majority to dispose of it in the way proposed, except that, under the constitution, they cannot be allowed to divest or embarrass the plaintiff's interest therein without first giving security therefor. The act of transfer and dissolution is one. If carried into effect, it destroys his stock. Before it is done he must be secured, and we must grant the injunction asked for, to stand until this is done.

> Let the injunction be issued on the plaintiff's giving security to the amount of $1000 to the defendants; and let it be dissolved on the defendants giving security to the plaintiff, in double the market value of his stock, to pay for said stock when its value shall be ascertained.