Harry TROUPIANSKY and William
B. Weinberger

v.

HENRY DISSTON & SONS, Inc., and H.
K. Porter Company, Inc.
Civ. A. No. 20242.

United States District Court
E. D. Pennsylvania.

May 9, 1957.

Wolf, Block, Schorr & Solis-Cohen,
Philadelphia, Pa., for plaintiffs.

Lewis M. Stevens and John C. Gilpin, Philadelphia, Pa., for defendant Henry Disston & Sons, Inc.

Philip H. Strubing, Philadelphia, Pa., for defendant H. K. Porter Co., Inc.

VAN DUSEN, District Judge.

This matter comes before the court on the motion of defendant Henry Disston & Sons, Inc. (hereinafter called "Disston") to dismiss plaintiffs' complaint, and on the motion of defendant H. K. Porter Company, Inc. (hereinafter called "Porter") to dismiss the action or for summary judgment.

Plaintiffs are the record holders of shares of common stock of defendant Disston and bring suit for the fair value of their stock as of November 14, 1955, the day prior to the special meeting of shareholders of Disston at which an "Agreement and Plan of Reorganization" dated October 15, 1955 (Exhibit "A–1" attached to Porter's motion to dismiss) was approved by a majority of the shareholders.

Plaintiffs were notified, both on October 14, 1955, and October 21, 1955, by Disston of such special meeting of shareholders for the purpose of voting on the "Agreement and Plan of Reorganization" and, prior to the scheduled date of the meeting, they notified Disston in writing that they objected to and dissented from the proposed agreement. Plaintiffs did not vote in its favor and promptly after the consummation of the plan made demand upon both defendants for payment of the fair value of their stock in Disston.

Defendants have refused to pay to plaintiffs the fair value of their stock in Disston and plaintiffs bring this suit for such sums, plus interest and costs.

Pursuant to the Agreement and Plan of Reorganization made between Disston and Porter, Disston agreed to transfer substantially all of its assets (including the right to use the name "Henry Disston & Sons, Inc.," as a division of Pittsburgh or Porter) to H. K. Porter Company, Inc. of Pittsburgh (herein called "Pittsburgh"), a wholly-owned subsidiary of Porter, in exchange for Porter's agreement to issue and deliver to Disston 60,000 shares of unissued cumulative preferred stock (par value $100 per share) of Porter and that it shall cause Pittsburgh to assume and become liable for all of Disston's indebtedness, obligations and liabilities at the time of the closing. Disston further agreed that promptly after the closing it would take steps to "effect its corporate dissolution and to distribute its then property to its shareholders."

Plaintiffs allege that, although defendants have failed to comply with Section 908 of the Pennsylvania Business Corporation Law, 15 P.S. § 2852–908, the transfer of the assets of Disston constituted a de facto merger.

Defendants, to the contrary, contend that this transfer of assets is governed by Section 311 of the Pennsylvania Business Corporation Law, 15 P.S. § 2852–311, which regulates the voluntary transfer of corporate assets. As this latter section grants no remedy[1] to stockholders protesting against the sale of all the corporate assets, and since Section 908 of the Corporation Code does give certain rights to dissenting shareholders to a plan of merger or consolidation, defendants allege that plaintiffs are without any statutory rights and their complaint, therefore, fails to state a claim for relief.

In view of the fact that Disston has agreed to dissolve and will cease to

---

1. Section 311, subd. C does, though, contain the following language:

"Nothing in this section shall be construed to authorize the conversion or exchange of assets in fraud of corporate creditors, or of minority shareholders, or shareholders without voting rights, or in violation of the act approved the twenty-third day of May, one thousand nine hundred nineteen * * * and its amendments and supplements."

But, in the absence of fraud, there is no means provided in Section 311 (as distinguished from the procedure of § 908 in merger) for a shareholder dissenting from a sale of corporate assets to obtain payment of the fair value of the corporation's stock.

exist as a corporate entity, abandoning its name and legal identity, becoming a division of Porter, with all of its stockholders becoming stockholders of Porter, and Pittsburgh assuming the liabilities of Disston, this transaction was in effect a de facto merger. See the unreported opinions dated 9/4/54 and 2/17/55 of Chief Judge Kirkpatrick in Marks v. Autocar Co., and White Motor Co., D.C., 153 F.Supp. 768; 152 F.Supp. 408; cf. Bloch v. Baldwin Locomotive Works, C.P.Del.Co., 1950, 75 Pa.Dist. & Co.R. 24, 1950.

 Under the Marks case, supra, whether Disston's transfer of its assets to Pittsburgh be labelled by Disston and Porter as a merger or a sale, the "exclusive" remedy of Section 908, subd. C does not preclude this action or the jurisdiction of this court. Section 901 et seq.

provides a procedure by which statutory merger may be accomplished, and if the corporations choose to use such procedure, dissenting shareholders' are restricted to the remedy envisioned in Section 908.[2]

But if the corporations do not choose the statutory method of merger and attempt to follow the procedure under Section 311 so that the transaction should appear to be a sale of assets, rather than a merger, then dissenting shareholders, though defeated from their right to the statutory remedy of appraisal by three disinterested persons appointed by the Court of Common Pleas, still cannot lose their rights to receive payment for their shares under the common law principles[3] stated in Lauman v. The Lebanon Valley Railroad Company, 1858, 30 Pa. 42;[4] The court there said, 30 Pa. at p. 47:

2. Era Co. v. Pittsburgh Consolidation Coal Co., 1946, 355 Pa. 219, 49 A.2d 342, 343, cited by defendant Disston for the proposition that "where a remedy or method of procedure is provided by an Act, its provisions shall be strictly pursued and exclusively applied," is not appropriate on the facts of this case. In the Era case, the corporations merging followed the procedures in the Corporation Law, 15 P.S. § 2852–901 et seq., and, therefore, dissenting shareholders were likewise required to conform to the procedure therein provided or else lose their remedy, whereas here Disston and Porter have chosen not to use the statutory method available to them.

3. Section 58(8) of the Pennsylvania Statutory Construction Act, 46 P.S. § 558(8), provides that provisions enacted prior to May 28, 1937, which are in derogation of the common law shall be strictly construed. Article IX of the Corporation Law, 15 P.S. §§ 2852–901 to 2852–909, enacted in 1933, thus must be strictly construed. Statutes are construed as nearly in accordance with prior law as may be, since it will not be presumed that the Legislature intended to make any further changes than absolutely required by the wording of the Act. Davidson v. Bright, 1920, 267 Pa. 580, 589, 110 A. 301; In re Deaner's Estate, 1929, 98 Pa.Super. 360, 365, 366.

4. The case now before this court involves substantially the same facts as those before Chief Judge Kirkpatrick in the

Marks case, supra, so that the decision in that case, relying on the Lauman case, supra, is controlling. See T. C. F. Film Corporation v. Gourley, 3 Cir., 1957, 240 F.2d 711, 713–4. However, the record does not show when plaintiffs acquired their shares. If it appears at the trial of this case that the shares were acquired subsequent to the effective date of the Pennsylvania Business Corporation Law (July 3, 1933—see 15 P.S. § 2852–1201), the plaintiffs must have acquired these shares with the understanding that, on a majority vote of shareholders, Disston's assets could have been sold for stock and Disston could have been dissolved with any surplus of such stock assets after payment of obligations being distributed to shareholders. Section 311 of the Business Corporation Law (15 P.S. § 2852–311) makes clear that Disston could sell all its assets for stock in another company, and Sections 1102 and 1104 of that Law (15 P.S. §§ 2852–1102 and 1104) provide that dissenting shareholders are bound by a majority vote in dissolution and are entitled to their share of the surplus, so that, assuming plaintiffs acquired their shares after 7/3/33, it is difficult to see how plaintiffs can establish any such private contract, giving them a right to a pro rata share in the enterprise formerly conducted by Disston, as was present in the Lauman case, supra. It is noted that the briefs in the Marks case apparently did not call to Chief Judge Kirkpatrick's attention that the court, in the Lauman case, relied on a

"Now, it is plain enough that a dissenting member cannot thus be forced into a new corporation, and that his property in one corporation cannot be taken from him and the stock of another imposed upon him by way of compensation, by the act either of the legislature or of his co-corporators, or of both combined."[5]

█ Defendant Porter in addition claims that if, pursuant to the Agreement and Plan of Reorganization, plaintiffs became legally or equitably entitled to the fair value of their stock, such claim exists only against Disston and not against Porter. The theory of the Lauman case, supra, is that Disston is a proper party to sue (see first paragraph of opinion 30 Pa. at page 44) and, further, that a shareholder's "property in one corporation cannot be taken away from him" in exchange for stock of an-other corporation so that, apparently, Pittsburgh, which has received Disston's property, would also be a proper defendant. However, counsel have produced no authority justifying the maintenance of such an action against a defendant which has no property of the company in which the dissenting shareholder holds stock. Under such circumstances, the defendant Porter is entitled to judgment in its favor.

Finally, defendants' motion to dismiss the complaint of plaintiff Weinberger as the amount in controversy does not exceed $3,000 will be postponed for determination at the time of trial.[6]

### Order

And now, May 9, 1957, it is ordered that the motion to dismiss of Henry Disston & Sons, Inc., filed March 7, 1956, is denied, and the motion to dismiss or for

---

violation of a private contract between the shareholders themselves in forcing a shareholder to take shares of a different corporation for his shareholder interest in the specific enterprise (see, for example, third paragraph on page 46 and last full paragraph on page 47 of 30 Pa.), which interest it was recognized might be converted into property (other than shares in another corporation) by dissolution (see pages 48–49 of 30 Pa.).

5. In the Marks case, supra, 153 F.Supp. at page 771, (opinion of 9/4/54) Chief Judge Kirkpatrick found that:

"The intentional failure of the defendants to complete the statutory proceedings, while it may deprive the plaintiff of the statutory remedy consisting of the appointment of appraisers, does not deprive her of all rights and does not deprive the court of jurisdiction to accord such rights through ordinary court procedures. See Bloch v. Baldwin Locomotive Works, 75 Pa.Dist. & Co.R. 24, in which the Court said 'In the case at bar defendant never intended to submit articles of merger to the Department of State for approval, because defendant has not brought itself within the terms of the statute. Therefore, the dissenting shareholder stands helpless to protect his rights unless and until some way is found to determine whether a merger is *in fact* taking place. The court of equity has been given the statutory authority and responsibility under the 'Business Corporation Law', supra, to determine finally, the fair value of a dissenting shareholder's shares of stock. We see no reason, therefore, why equity should not also have authority to determine whether or not a merger has *in fact* taken place, where the statute is not followed by the corporation involved.'"

6. Plaintiff Weinberger holds 35 shares of common stock in Disston and alleges in the complaint that the fair value of Disston stock was in excess of $100 per share. Defendant Disston contends in its motion that the fair value of such stock was no more than $54 per share (see Exhibits A and B attached to Disston's motion), and the requisite jurisdictional amount of $3,000 is not present. In view of the fact that plaintiff Troupiansky's jurisdictional amount is not questioned and this matter will go to trial in any event, at which time the value of the stock will have to be determined, and since there is conflict as to the basis for valuing stock traded over-the-counter (see In re Moffett Estate, 1952, 369 Pa. 159, 85 A.2d 109, and Austin v. City Stores Co., 1953, 89 Pa.Dist. & Co.R. 57), this question will be deferred until trial. See 2 Moore's Federal Practice (2nd Ed.) § 12.16, p. 2275; Gulbenkian v. Gulbenkian, D.C.S.D.N.Y.1940, 33 F. Supp. 19. It would seem most unlikely that plaintiff Weinberger could recover in this court in view of the above-mentioned Exhibits.

summary judgment of H. K. Porter Company, Inc., filed March 23, 1956, is granted, and that this action is dismissed, with prejudice, as to defendant H. K. Porter Company, Inc.