## Lowry v. General Waterworks Corporation

*Clark, Spahr, Eichman & Yardley, Schnader, Harrison, Segal & Lewis* and *Marvin Garfinkel,* for dissenting shareholders.

*White & Williams,* for respondent.

MILNER, P. J., June 21, 1961.—This is a proceeding to appraise the common and preferred stock of Fifteen Hundred Walnut Street Corporation as of June 2, 1957, the day before the date on which a majority of its shareholders approved a merger of that corporation with General Waterworks Corporation, respondent herein. Holders of 1,503 (of a total of 6,590 outstanding) shares of the common stock and 48 (of a total of 2,175½ outstanding) shares of the preferred stock, dissenting from the action of the majority, petitioned the court pursuant to section 908 of the Business Corporation Law of May 5, 1933, P. L. 364, as amended March 31, 1941, P. L. 13, 15 PS §2852-908, to appoint appraisers to appraise the value of their shares of stock. The court, by decree entered July 8, 1959, appointed Paul Henon, William J. Meinel and Robert E. Lenton as appraisers. Paul Henon is an architect and builder of long experience; William J. Meinel is a corporation executive and business man also of long experience; Robert E. Lenton, Esq., is an experienced practicing lawyer. The court could interpolate many laudatory remarks about the ability and the outstanding accomplishments of the appraisers, but it will suffice to say that the court has the utmost confidence in their fitness to make a fair appraisement of the fair value of the stock of Fifteen Hundred Walnut Street Corporation. The appraisers held hearings on eight

days between April 18, 1960, and June 1, 1960, to hear the testimony of the witnesses for petitioners and respondent. The testimony covers 1,256 typewritten pages and there were 43 exhibits presented by petitioners and 18 exhibits presented by respondent. Both sides presented expert witnesses to testify in regard to various elements of value to be considered in appraising the stock. The appraisers determined the fair value of the common stock as of June 2, 1957, to have been $99.07 a share and the fair value of the preferred stock as of January 2, 1957, to have been $96.48 and based their recommendations as to the award to be made by the court to the dissenting stockholders on those values. The Act of Assembly makes no provision respecting exceptions to the appraisers' report. However, by analogy to the rules of court in other proceedings, the appraisers furnished to each of the parties a copy of their report and award, with notice that the same would be filed on January 27, 1961, and that unless exceptions were filed within 20 days from the date of filing, the court would be asked to approve the report and enter the award of the appraisers as the award of the court.

Both petitioners and respondent have filed exceptions to the appraisers' report. The gist of these exceptions is with respect to the fair value arrived at by the appraisers. Petitioners contend that the appraised values of the stocks are too low, and respondent contends they are too high. That the parties to this proceeding would have different ideas of the values of the stock is to be expected, but the disinterested appraisers appointed by this court, and not the parties, are the ones designated by the Act of Assembly to fix the value of the shares and the appraisers appointed herein, in whom the court has complete confidence as to their fairness, intelligence and diligence, have filed a comprehensive and persuasive report in which they set forth

the factual and legal reasons for their determination of the fair value of the stock involved herein. We approve and adopt the factual and legal reasons for their determination of the fair value of the said shares as the reasons of the court for making awards to the dissident stockholders based on the fair value as of June 2, 1957, of $99.07 a share for common stock and $96.48 a share for preferred stock as determined by the appraisers. We make reference to the appraisers' report but deem it unnecessary to repeat the findings and reasonings thereof. It will suffice to discuss briefly those which were stressed at the hearing on the exceptions.

Plaintiffs (dissident stockholders) contended that "a corporate merger is an act of dissolution" and therefore the stock should be valued as though the corporation were in dissolution and the value to be ascertained were the liquidation value. The appraisers rejected this contention after reviewing the legislative history and significant Pennsylvania decisions, and valued the stock as a going concern as of June 2, 1957.

Under section 908B of the Business Corporation Law of May 5, 1933, as amended, supra, "the dissenting shareholder may. . . . apply, by petition to the court of common pleas, . . . for the appointment . . . of three disinterested persons to appraise the fair value of his shares without regard to any depreciation or appreciation *thereof* in consequence of the merger or consolidation. The award of the appraisers, or of a majority of them, shall be submitted to the court for determination, and the judgment of the court thereon shall be final and conclusive."

The only remedy a dissenting stockholder has is to receive in exchange for his shares the fair value thereof as determined in accordance with the statute: Farris v. Glen Alden Corporation, 393 Pa. 427 (1958). Petitioners relied upon Lauman v. The Lebanon Valley

Railroad Company, 30 Pa. 42 (1858), and Farris v. Glen Alden Corporation, supra, as authorities for their contention. The Lauman case came before the courts over a century ago. It did not concern a merger under section 908 of the Business Corporation Law which applies in the case at bar. A special act of the legislature had provided for the merger of the Lebanon Valley Railroad Company into the Philadelphia and Reading Railroad without making any provision for the event of a dissent by any shareholder. A shareholder filed a bill to restrain the merger. The language of the court in its opinion in that case suggests that the special act of the legislature was equivalent to the dissolution of the Lebanon Company. The court issued the injunction but directed that it be dissolved upon defendant posting security to the dissenting stockholder in "double the market value of his stock, to pay for the stock when its value shall be ascertained". In Farris v. Glen Alden Corporation, supra, while the language of the court's opinion suggests that a merger has in it the elements of a dissolution, nevertheless in holding that a dissenter to a "Reorganization Agreement" was entitled to the rights of a dissenter to a merger, makes it clear on page 435 of its opinion that that right is "to have his shares redeemed at their fair value." It will be seen that even considering a merger to be equivalent to a dissolution, with which we do not agree, it does not follow that the fair value of the dissenter's shares is that which he would have received in the event of dissolution without merger. As the appraisers very pertinently state:

"Such a result could work great hardship in the case of a corporation whose earnings were inordinately high but whose tangible assets would yield little if exposed to sale. Moreover, even if merger was synonymous with dissolution, the act of assembly prescribes that the fair value is to be determined without regard

to the effect of the merger; which we take to mean that the value to be arrived at is the fair value of the shares at the date of merger considering the corporation as a continuing project, as if no merger had been effected."

The appraisers have also incorporated in their report a history of the decisional law, in which it will be seen that the principle that, while minority stockholders could not block a corporate merger by dissenting therefrom, they could not, on the other hand, be deprived of their right to compensation for their loss of interest in the merger corporation. This principle became part of the statutory law, which, in some instances, called for the appraisal of the dissident's stock at its "full market value", but never at its value in dissolution of the corporation, and the Business Corporation Law in effect at the time this merger was authorized provided for the appraisal at its "fair value". Furthermore, the wording of the present act clearly indicates that it is the fair value of the stock of a going corporation which has become part and parcel of another corporation to which the dissenting shareholder is entitled and not of a dissolved corporation on the auction block. See Warren v. Baltimore Transit Company, 220 Md. 478, 154 A. 2d 796 (1959), where the court said, "The text writers and cases agree generally that this (the fair value of his shares) is to be determined by assuming that the corporation will continue as a going concern—not that it is being liquidated . . ."

We, therefore, are of the opinion that the exceptions of the petitioners to the determination of the fair value as a going concern are without merit.

The basis of another exception, filed by the respondent, is that no expert opinion evidence was presented by petitioners as to the fair value of the shares of the Fifteen Hundred Walnut Street Corporation as

a going concern. Petitioners did present four expert witnesses, as follows: Samuel T. Hall, a real estate expert, who testified as to the value of the real estate owned by the corporation, which he appraised at $3,000,000; Charles E. Toewe, a certified public accountant, who made studies of corporate data and prepared statements, charts and material to reflect a factual history of the operations of the company and present comprehensively the financial operations of the corporation during the period from 1941 to 1956 and who testified thereto before the appraisers; Robert G. Rowe, executive vice president of Stroud & Company, an investment banker, who testified regarding the financial history of the office building owned by the corporation and the value of the real estate as a prime asset of the corporation; John M. Flynn, manager of the trading department of E. W. Clark & Co., an investment banker, who testified as to the manner of determining the fair value of the shares of stock of the corporation. Respondent apparently means that the witnesses for petitioners, although they testified as to facts from which the appraisers could be guided to a determination of the value of the stock, did not state what they considered the exact value, in dollars and cents, of each share. (As a matter of fact, Mr. Flynn testified that, in his opinion, the common stock had a fair value of $200 per share and the preferred $110.50.) It is not the expert witnesses who are designated by the Business Corporation Law to find the fair value, but it is the appraisers. The appraisers hear all the facts in regard to the various factors to be considered in determining the value and from the consideration of them make their appraisement. In doing so, they can take in the expert testimony and facts presented by both the petitioner and respondent. Respondent produced three expert witnesses, each of whom testified as to his opinion of the fair value of the

shares. The appraisers had this testimony to weigh and consider in their determination of the fair value of the shares. They were not obliged to accept or follow the conclusion of any witness whose conclusion was inconsistent with or not supported by facts they had before them, which they were convinced were correct and controlling. There is no merit in this exception.

In their report, the appraisers, after discussing the various definitions of "fair value", arrived at the conclusion that the fair value for our present purposes is the appropriately weighted average of three elements, which they labeled asset value, market value and investment value. Although the labels placed upon the various elements of value are different, the conclusion reached by the appraisers is in accord with the conclusion of Judge Alessandroni in a well considered opinion in Austin v. City Stores Company (No. 1), 89 D. & C. 57 (1953). The parties to this proceeding do not have any serious objection to the method used in arriving at the fair value, but are not in agreement as to the respective weights given to the three elements mentioned above.

After the appraisers had determined the value of each of the three said elements of value, they determind by percentages the weight they concluded should be given to each element in order to arrive at the weighted average which represents the fair value. They carefully considered the evidence and exhibits before them and after consultations among themselves determined the asset value (which represents the real estate) was in the neighborhood of $2,750,000, which results in an asset value of $164.64 per share for common stock and $110.50 per share for the preferred stock; market value, $37 per share for the common stock and $83 per share for the preferred stock; the investment value, $68 per share for the common stock

and $90 for the preferred stock. In ascertaining the weighted average representing the fair value, the appraisers took 35 percent for the asset value, 10 percent for the market value and 55 percent for the investment value, and accordingly found the fair value of the preferred stock of Fifteen Hundred Walnut Street Corporation, as of June 2, 1957, to be $96.48 per share, and the fair value of the common stock $99.07 per share.

Respondent maintains that the value placed on the assets was excessive and that too high a percentage factor was given to the asset value in determining the fair value.

The following table summarizes the mathematics of the appraisal:

|  | *Common* | *Preferred* |
|---|---|---|
| Appraisers' asset value: | $165.64×35%=$57.97 | $110.50×35%=$38.68 |
| Appraisers' market value: | 37.00×10%= 3.70 | 83.00×10%= 8.30 |
| Appraisers' investment value: | 68.00×55%= 37.40 | 90.00×55%= 49.50 |
| Appraisers' valuation per share: | $99.07 | $96.48 |

The sole purpose and business function of Fifteen Hundred Walnut Street Corporation was the ownership and operation of a large, modern office building at one of the most desirable and strategic locations in the central business district of Philadelphia, viz., the southwest corner of 15th and Walnut Streets. As stated by the appraisers: "This real estate consisted of a lot having a frontage of eighty feet on Walnut Street and extending to a depth of 116 feet along Fifteenth Street, with a 22-story office building, erected in 1927, occupying the lots numbered 1500-1504 Wal-

nut Street and a three-story office building occupying 1506 Walnut Street. The two buildings are physically connected and are operated as one."

The building enjoys an unusually high percentage of occupancy. It is equipped with electric elevators and is air-conditioned and has been well maintained. Samuel T. Hall, testifying for petitioners, placed a value of $2,640,000 on the building and $360,000 on the land, a total of $3,000,000. Boyd T. Barnard, called by respondent, placed a valuation on the building of $2,135,000 and $465,000 on the land, a total of $2,-600,000. The difference of $400,000 between the two valuations is for all practical purposes the only factual dispute between the parties. The appraisers had before them the fact that the building had some unusual features, for example, the three-story building at 1506 Walnut Street which adjoined the main building and is connected with it made possible the 19 upper floors having windows on all four sides of the building, a feature which is not usually obtainable in the central city buildings unless they occupy a complete block of land. It was testified that the building was well built and has four fronts of the same quality of materials and finish. It is a four-front building with windows on all sides. The appraisers also had witnesses before them who testified in regard to data bearing on the historical cost, earning power of the building, etc. They took all factors into consideration in coming to their valuation of $2,750,000 for the real estate owned by the corporation and took 35 percent of that valuation in arriving at the weighted average. Inasmuch as they valued the common stock at $99.07 per share, this results in the fact that $57.97 represents asset value reflected in each share. The preferred stock which they valued at $96.48 a share was reflected at $38.68. From a study of the record and the appraisers' report, we

find no reason to disturb the determinations of the appraisers in regard to asset value.

Plaintiffs excepted to the appraisers' findings as to the market value of the preferred and common stock and its consideration in arriving at the fair value of the stock. The early statutes providing for mergers provided for appraisal of the "market value" of dissenting stockholders' shares, and in valuation proceedings of utilities for rate purposes the element of market value of the shares is invariably taken into consideration as an element in helping to ascertain the value of a company. It is recognized as an aid to determine the value of shares of stock in the merger of corporations. See Austin v. City Stores Company (No. 1), supra, p. 63, and Application of Behrens, 61 N. Y. S. 2d 179 (1946). The testimony shows that, while there was not any stock bought and sold on a recognized stock exchange, there were records of sales and transfers of the stock over-the-counter for several years prior to the merger. The appraisers found in this case that "the nearest approach to market value" for the shares was on June 2, 1957, $37.50 per share for the common and $83 per share for the preferred. (These prices were based on actual sales.) The Fifteen Hundred Walnut Street Corporation was apparently a fairly closely held corporation and because of the nature of the market for the shares, the appraisers considered the element of market value to be of minor importance and gave it a weight of 10 percent in arriving at their weighted average, which amounts to $3.70 of the fair value found by the appraisers for common stock and $8.30 of the fair value of the preferred stock. In our opinion, the exception in this matter is ill founded.

Respondent contends that the appraisers gave insufficient weight to the factor they termed "Investment Value". In ascertaining the fair value of the shares

in addition to the asset value and market value discussed above, there are a number of other factors which must be considered, viz., original costs, historical costs, corporate worth, corporate balance sheet, earning statements, reserves for depreciation, management. Witnesses before the appraisers with their testimony and exhibits substantially covered the subjects. The appraisers combined them under a factor which they termed investment value and took them into consideration as elements in determining the fair value of the shares. A corporation, of course, is more than the buildings or machinery it owns; as a corporate entity it may or may not have potential earning power. The value of the stock depends not merely on the assets of the corporation, but also on its capability of earning profits to keep the stock valuable and yielding possible dividends. From the data the appraisers were furnished, and having in mind the corporation whose shares they were valuing was confined to the operation of real estate and was not a manufacturing or sales corporation; that the real estate was well maintained, provision had been made for depreciation and earnings were stable and substantial, they determined its investment value to be $68 per common share and its weight of 55 percent, or $37.40 of the fair value of the common stock, and $49.50 of the fair value of the preferred stock.

The elements comprising the various factors taken into consideration in determining the value are bound to overlap in some instances, and it is inevitable that parties whose interests are divergent may differ as to the value to be given to different factors. Furthermore, when considering the elements entering into a determination of the factor which has been labeled "Investment Value" it is not possible to reduce each to a mathematical chart that is of practical use; e.g., the capitalization of the net earnings of a corporation

at a chosen rate of six percent does not necessarily result in the true value of the corporation, and, if there are no net earnings after taxes, it does not follow that the corporation does not have substantial worth. The appraisers took all the information in regard to the corporation that was presented to them and made their considered and thoughtful judgment as to what it revealed. From our review of the record in this case, we are convinced that their determination of the investment value and the weight given to it is fair and proper under the provisions of the Business Corporation Law.

Plaintiffs have excepted to the appraisal on the ground that the appraisers did not allow and award interest at the rate of six percent per annum on their awards to plaintiffs. Section 908 of the Business Corporation Law of 1933, as amended, provides that:

"If any shareholder of a domestic corporation which becomes a party to a plan of merger or consolidation shall object to such plan of merger or consolidation and shall comply with the provisions of section 515, such shareholder shall be entitled to the rights and remedies of dissenting shareholders therein provided."

Section 515C, until amended in 1959, after these proceedings, which governs these proceedings, provides:

". . . for the appointment [by the court] of three disinterested persons *to appraise the fair value of his shares* without regard to any depreciation or appreciation thereof in consequence of any such plan . . . The *award* of the appraisers, or of a majority of them, shall be submitted to the court for determination, and the judgment of the court thereon shall be final and conclusive. The costs of such appraisal, including a reasonable fee to the appraisers, shall be fixed by the court . . . *The award shall be payable* only upon, and simultaneously with, the surrender . . . of the

share certificate or certificates . . ." (Italics supplied.)

It will be seen that the governing statute makes no provision for the award of interest. Judge Alessandroni rejected a petition for the allowance of interest in a merger proceeding under the above statute in Austin v. City Stores Co. (No. 2), 89 D. & C. 75 (1954). He rested his decision on the following considerations:

1. The language of the statute makes no provision for interest.

2. The language of the statute cannot be construed to include interest.

3. The dissenters are under no statutory compulsion to decide whether to take the offer of the merging company or to proceed under the statute for a determination of fair value, and, accordingly, therefore, respondent has committed no tort or other legal wrong to them.

4. The running of interest would cause a loss to the vast majority of shareholders because the proceedings, by their very nature, are extended.

5. The statutes of New York and Delaware have both been expressly amended to allow interest, but prior to such amendment the courts uniformly refused to allow interest.

In Dickinson v. Fire Association of Philadelphia, 2 D. & C. 2d 739 (C. P. No. 5 of Philadelphia County, 1955), Judge Alessandroni allowed a dissenter interest from 30 days after the final decision requiring the surviving corporation to pay the award, since it became a judgment and as such automatically bore interest from that date, but he denied any interest until the date the award became final, even though the vote on the merger had been almost five years before that date.

In another case involving a dissenters' appraisal, Duddy v. Conshohocken Printing Company (No. 2), 2 D. & C. 2d 402 (C. P. of Montgomery County, 1948), counsel for the dissenters requested the court to award interest but was refused. While the dissenters filed two appeals to the Superior Court, in neither did they object to the court's failure to allow interest.

It would be particularly inappropriate and unfair to the majority of the shareholders to award interest to the dissenters in this case, in view of the fact that almost four years have now elapsed since the merger became effective and that the delay in the consummation of the proceedings has been in no way attributable to respondent.

It is significant that in 1959 (two years after the institution of these proceedings) the Pennsylvania Act was amended, as the New York and Delaware Acts had been, specifically to provide that the court might allow interest: Act of Nov. 10, 1959, P. L. 1406, 15 PS §2852—515, pocket part. The report of the Pennsylvania Bar Association Committee on Corporation Law, which drafted the amendment, will be found in 28 Pennsylvania Bar Association Quarterly 121. It makes it clear that the amendment was intended to change the existing law and to give to a dissenting shareholder "creditor status on making a demand for payment for his shares", which he had not had under prior law. At the same time, there were taken from dissenting shareholders certain rights they had had under prior law. Such action of the legislature confirms the fact that, prior to the amendment, interest was not allowable. The 1959 Act, of course, is not retroactive and does not govern the case at bar.

Said section 515C which governs the case at bar provides that: "If the award shall not be paid by such corporation within thirty days after the order of the court

thereon, the amount of the award shall be a judgment against such corporation and may be collected as other judgments in such court are by law collectible." This demonstrates that the intent of the legislature was that no interest would become payable on the award until after judgment was entered on the award as provided in the statute. The appraisers, therefore, properly did not include interest on their awards.

Dividends on the preferred stock were in arrears to the extent of $60.50 a share. If the corporation were in dissolution and liquidation, the preferred shareholders would be entitled to $110.50 in redemption value and accumulated dividends, but there was no prospect that they would receive this amount in the near future and the appraisers did not undertake to value the stock as if the corporation were being liquidated, and therefore valued it from the evidence before them, finding its fair value on June 2, 1957, to be $96.48 a share, which is a fair and just appraisement.

Plaintiffs also except to the action of the appraisers in sustaining respondent's objections to questions put in cross-examination to respondent's witnesses, Howard K. Butcher, 3rd, and Leon Otkiss, designed to elicit the facts and circumstances pertaining to the identity of the owner of the office building at 1500-1506 Walnut Street following the merger, the facts and circumstances pertaining to the leasing of that real estate to Fifteen Hundred Walnut Company following the merger, and details concerning the formation of Fifteen Hundred Walnut Company, the ownership of its stock and its operations.

The objections were properly sustained.

Section 515B of the Business Corporation Law provides that the dissenting stockholders are entitled to "the payment of the fair value of his shares as of the day prior to the date on which the vote was taken ap-

proving the plan, without regard to any depreciation or appreciation thereof in consequence of the plan."

Subsequent to the merger respondent formed a subsidiary company, Fifteen Hundred Walnut Company, which acted as operating manager of the building. Petitioners' counsel directed certain questions to the president of respondent and the certified public accountant employed by respondent in an effort to elicit information in regard to the leasing of the building subsequent to the merger and the ownership of the stock and operations of the subsidiary, Fifteen Hundred Walnut Company. Under the provisions of aforesaid section 515 of the governing statute, it is clear that the evidence sought by the questions was irrelevant and immaterial. As a matter of fact, the record and the exhibits attached thereto show that respondent leaned over backward in making available to plaintiffs all information to which they could possibly be held entitled and it is patent that they were not denied access to any relevant and material records.

For the reasons given above, plaintiffs' and respondent's exceptions to the report of the appraisers will be overruled and the appraisers' report will be approved.

Plaintiffs have filed petitions for costs and expenses which they allege they have incurred in presenting their claims before the appraisers for compensation for their shares.

Section 908 of the Business Corporation Law of May 5, 1933, as amended up to June 1, 1957, the date of the merger (see 15 PS §2852—515C and 908), provides:

"The costs of such appraisal, including a reasonable fee to the appraisers, shall be fixed by the court and shall be borne by such corporation unless, in the opinion of the court, the action of any shareholder in refusing the offer of such corporation has been arbitrary, vex-

atious, or in bad faith, in which case the costs shall be assessed in the discretion of the court."

The action of plaintiffs in refusing the offer of respondent corporation for their stock and the petitions for the appraisement of the fair value of their stock were the result of an honest difference of opinion as to the value of the stock and were not arbitrary, vexatious, or in bad faith. Respondent does not contend otherwise, but does contend that plaintiffs are not entitled to certain items for which they make claim.

Malinda B. Farrow and Rose R. Lowry, plaintiffs, ask for the following costs:

| | |
|---|---|
| Filing complaint with prothonotary..... | $ 4.25 |
| Affidavit of service.................... | 1.00 |
| John M. Flynn, expert witness fee...... | 200.00 |
| Notes of testimony.................... | 628.00 |

Respondent does not object to the first three items, and the court considers them properly chargeable as costs against respondent under the provisions of the statute, but respondent does object to the fourth, viz., cost of the notes of testimony. In the opinion of the court, the copy of the notes of testimony which plaintiffs obtained from the court reporter was for their own convenience, instead of using the notes of testimony filed of record, and the objection is well taken. The cost of notes of testimony must be borne by said plaintiffs.

John Kaplan, guardian for Bruce Perry and David Perry, ask allowance for

| | |
|---|---|
| Costs for filing complaint................ | $4.25 |
| Costs of service of petition.............. | 2.90 |

as to which no objection has been filed and they will be allowed as costs to be borne by the repsondent.

Harry J. Perry has filed a petition asking allowance for costs to be paid by respondent as follows:

| | |
|---|---:|
| Samuel T. Hall—expert witness | $2,750.00 |
| Charles F. Toewe—expert witness | 1,568.50 |
| Robert G. Rowe—expert witness | 250.00 |
| Filing petition in equity | 4.25 |
| Service of petition | 2.90 |
| Witness fee | 3.00 |
| Notes of testimony | 628.00 |
| Photostats of exhibits for use of appraisers | 33.75 |
| Photostats of leases admitted in evidence | 16.25 |
| Photostats of exhibits for use of appraisers | 32.24 |
| Photostats of exhibits for use of appraisers | 29.68 |
| Expense of multilithing copies of petitioner's brief | 10.75 |
| Expense of multilithing copies of petitioner's reply brief | 4.69 |

No objection has been filed by respondent to the first six items, and they are properly chargeable against respondent, but respondent objects to the last seven items. The court is of the opinion that the last seven items of expense were incurred for the convenience of said plaintiff and are not the costs contemplated by aforesaid section 908 of the Pennsylvania Business Corporation Law as essential for the appraisers' determination of the fair value of the shares and hence should not be allowed as costs to be borne by the respondent.

John K. Ruckdeschel has filed a petition asking allowance for the following costs to be borne by the respondent, viz.

| | |
|---|---:|
| Costs of filing complaint | $4.25 |
| Affidavit to complaint | 1.00 |

Affidavit to service . . . . . . . . . . . . . . . . . . . . . 1.00

Respondent has filed no objection to the allowance of these costs and they are clearly within the provision of aforesaid section 908. They will be allowed as costs to be borne by respondent.

Plaintiffs, Sig M. Heller, Philippine Pollen and Simon L. Garfinkel have not filed petitions for allowance of costs.

A number of plaintiffs incorporated in their petitions a demand for interest on the fair value fixed for their shares of stock from the date of the merger. This claim was also made the subject of an exception to the appraisers' report, which is overruled.

For the reasons given above the court overrules all the exceptions filed by plaintiffs and respondent to the appraisers' report, approves the said report and enters the following

*Award*

Plaintiffs shall be forthwith paid by respondent, General Waterworks Corporation, for their shares of common and preferred stock in said Fifteen Hundred Walnut Street Corporation set opposite their respective names, viz.:

Malinda B. Farrow
 193 shares of common
  at $99.07 . . . . . . .     $19,120.51

Rose R. Lowry
 192 shares of common
  at $99.07 . . . . . . .     19,021.44

John K. Ruckdeschel
 15 shares of common
  at $99.07 . . . . . . $1,486.05
 38 shares of pref'd at
  $96.48 . . . . . . . . . 3,666.24  5,152.29

Simon L. Garfinkel
  4 shares of common
      at $99.07........  396.28
  10 shares of pref'd at
      $96.48 .........  964.80    1,361.08

Harry J. Perry
  893 shares of common
      at $99.07........            88,469.51

Joseph Kaplan, guardian for Bruce Perry and guardian for David Perry
  200 shares of common
      at $99.07........            19,814.00

Sig M. Heller and Philippine Pollen
  6 shares of common
      at $99.07........              594.42

and shall also pay to plaintiffs the costs and expenditures they have incurred in the foregoing proceedings opposite their respective names, viz.:

Malinda B. Farrow.................. $  205.25
Joseph Kaplan, guardian for Bruce Perry
      and guardian for David Perry.....      7.15
Harry J. Perry...................... 4,578.65
John K. Ruckdeschel ................     6.25

and shall also pay to William J. Meinel, Paul Henon and Robert E. Lenton, Esq., as compensation for their services as appraisers $14,000.