Farris *v.* Glen Alden Corporation, Appellant.

Argued May 28, 1958. Before JONES C. J., BELL, MUSMANNO, ARNOLD, JONES and COHEN, JJ.

428

*Arthur Littleton,* with him *Franklin B. Gelder, J. Julius Levy, W. James MacIntosh,* and *Morgan, Lewis & Bockius,* for appellants.

*Henry Thalenfeld,* with him *Michael H. Sheridan,* for appellee.

*John Mulford,* Chairman, and *William P. Hackney* and *Carroll R. Wetzel,* filed a brief for Committee on Corporation Law of Pennsylvania Bar Association, amicus curiae, pursuant to Rule 46.

OPINION BY MR. JUSTICE COHEN, June 30, 1958:

We are required to determine on this appeal whether, as a result of a "Reorganization Agreement" executed by the officers of Glen Alden Corporation and List Industries Corporation, and approved by the shareholders of the former company, the rights and remedies of a dissenting shareholder accrue to the plaintiff.

Glen Alden is a Pennsylvania corporation engaged principally in the mining of anthracite coal and lately in the manufacture of air conditioning units and fire-fighting equipment. In recent years the company's operating revenue has declined substantially, and in fact, its coal operations have resulted in tax loss carry-overs of approximately $14,000,000. In October 1957, List, a Delaware holding company owning interests in

motion picture theaters, textile companies and real estate, and to a lesser extent, in oil and gas operations, warehouses and aluminum piston manufacturing, purchased through a wholly owned subsidiary 38.5% of Glen Alden's outstanding stock.[1] This acquisition enabled List to place three of its directors on the Glen Alden board.

On March 20, 1958, the two corporations entered into a "reorganization agreement," subject to stockholder approval, which contemplated the following actions:

1. Glen Alden is to acquire all of the assets of List, excepting a small amount of cash reserved for the payment of List's expenses in connection with the transaction. These assets include over $8,000,000 in cash held chiefly in the treasuries of List's wholly owned subsidiaries.

2. In consideration of the transfer, Glen Alden is to issue 3,621,703 shares of stock to List. List in turn is to distribute the stock to its shareholders at a ratio of five shares of Glen Alden stock for each six shares of List stock. In order to acomplish the necessary distribution, Glen Alden is to increase the authorized number of its shares of capital stock from 2,500,000 shares to 7,500,000 shares without according pre-emptive rights to the present shareholders upon the issuance of any such shares.

3. Further, Glen Alden is to assume all of List's liabilities including a $5,000,000 note incurred by List in order to purchase Glen Alden stock in 1957, outstanding stock options, incentive stock options plans, and pension obligations.

4. Glen Alden is to change its corporate name from Glen Alden Corporation to List Alden Corporation.

---

[1] Of the purchase price of $8,719,109, $5,000,000 was borrowed.

5. The present directors of both corporations are to become directors of List Alden.

6. List is to be dissolved and List Alden is to then carry on the operations of both former corporations.

Two days after the agreement was executed notice of the annual meeting of Glen Alden to be held on April 11, 1958, was mailed to the shareholders together with a proxy statement analyzing the reorganization agreement and recommending its approval as well as approval of certain amendments to Glen Alden's articles of incorporation and bylaws necessary to implement the agreement. At this meeting the holders of a majority of the outstanding shares, (not including those owned by List), voted in favor of a resolution approving the reorganization agreement.

On the day of the shareholders' meeting, plaintiff, a shareholder of Glen Alden, filed a complaint in equity against the corporation and its officers seeking to enjoin them temporarily until final hearing, and perpetually thereafter, from executing and carrying out the agreement.[2]

The gravamen of the complaint was that the notice of the annual shareholders' meeting did not conform to the requirements of the Business Corporation Law in three respects: (1) It did not give notice to the shareholders that the true intent and purpose of the meeting was to effect a merger or consolidation of Glen Alden and List; (2) It failed to give notice to the shareholders of their right to dissent to the plan of merger or consolidation and claim fair value for their shares, and

---

[2] The plaintiff also sought to enjoin the shareholders of Glen Alden from approving the reorganization agreement and from adopting amendments to Glen Alden's articles of incorporation, certificate of incorporation and bylaws in implementation of the agreement. However, apparently because of the shortness of time, this prayer was refused by the Court.

(3) It did not contain copies of the text of certain sections of the Business Corporation Law as required.[3]

By reason of these omissions, plaintiff contended that the approval of the reorganization agreement by the shareholders at the annual meeting was invalid and unless the carrying out of the plan were enjoined, he would suffer irreparable loss by being deprived of substantial property rights.[4]

The defendants answered admitting the material allegations of fact in the complaint but denying that they gave rise to a cause of action because the transaction complained of was a purchase of corporate assets as to which shareholders had no rights of dissent or appraisal. For these reasons the defendants then moved for judgment on the pleadings.[5]

The court below concluded that the reorganization agreement entered into between the two corporations was a plan for a *de facto* merger, and that therefore the

---

[3] The proxy statement included the following declaration: "Appraisal Rights.

In the opinion of counsel, the shareholders of neither Glen Alden nor List Industries will have any rights of appraisal or similar rights of dissenters with respect to any matter to be acted upon at their respective meetings."

[4] The complaint also set forth that the exchange of shares of Glen Alden's stock for those of List would constitute a violation of the preemptive rights of Glen Alden shareholders as established by the law of Pennsylvania at the time of Glen Alden's incorporation in 1917. The defendants answered that under both statute and prior common law no preemptive rights existed with respect to stock issued in exchange for property.

[5] Counsel for the defendants concedes that if the corporation is required to pay the dissenting shareholders the appraised fair value of their shares, the resultant drain of cash would prevent Glen Alden from carrying out the agreement. On the other hand, plaintiff contends that if the shareholders had been told of their rights as dissenters, rather than specifically advised that they had no such rights, the resolution approving the reorganization agreement would have been defeated.

failure of the notice of the annual meeting to conform to the pertinent requirements of the merger provisions of the Business Corporation Law rendered the notice defective and all proceedings in furtherance of the agreement void. Wherefore, the court entered a final decree denying defendants' motion for judgment on the pleadings, entering judgment upon plaintiff's complaint and granting the injunctive relief therein sought. This appeal followed.

When use of the corporate form of business organization first became widespread, it was relatively easy for courts to define a "merger" or a "sale of assets" and to label a particular transaction as one or the other. See, e.g., 15 Fletcher, Corporations §§7040-7045 (rev. vol. 1938); *Buist's Estate,* 297 Pa. 537, 541, 147 Atl. 606 (1929); *Koehler v. St. Mary's Brewing Co.,* 228 Pa. 648, 653-654, 77 Atl. 1016 (1910). But prompted by the desire to avoid the impact of adverse, and to obtain the benefits of favorable, government regulations, particularly federal tax laws, new accounting and legal techniques were developed by lawyers and accountants which interwove the elements characteristic of each, thereby creating hybrid forms of corporate amalgamation. Thus, it is no longer helpful to consider an individual transaction in the abstract and solely by reference to the various elements therein determine whether it is a "merger" or a "sale". Instead, to determine properly the nature of a corporate transaction, we must refer not only to all the provisions of the agreement, but also to the consequences of the transaction and to the purposes of the provisions of the corporation law said to be applicable. We shall apply this principle to the instant case.

Section 908A of the Pennsylvania Business Corporation Law provides: "If any shareholder of a domestic corporation which becomes a party to a plan of merger

or consolidation shall object to such plan of merger or consolidation . . . such shareholder shall be entitled to . . . [the fair value of his shares upon surrender of the share certificate or certificates representing his shares]." Act of May 5, 1933, P.L. 364, as amended, 15 P.S. §2852-908A.[6]

This provision had its origin in the early decision of this Court in *Lauman v. The Lebanon Valley R.R. Co.*, 30 Pa. 42 (1858). There a shareholder who objected to the consolidation of his company with another was held to have a right in the absence of statute to treat the consolidation as a dissolution of his company and to receive the value of his shares upon their surrender.

The rationale of the *Lauman* case, and of the present section of the Business Corporation Law based thereon, is that when a corporation combines with another so as to lose its essential nature and alter the original fundamental relationships of the shareholders among themselves and to the corporation, a shareholder who does not wish to continue his membership therein may treat his membership in the original corporation as terminated and have the value of his shares paid to him. See *Lauman v. Lebanon Valley R.R. Co.*, supra, 30 Pa. at 46-47. See also *Bloch v. Baldwin Locomotive Works*, 75 Pa. D. & C. 24, 36, 38 (C.P. Del. 1950).

Does the combination outlined in the present "reorganization" agreement so fundamentally change the corporate character of Glen Alden and the interest of

---

[6] Furthermore, section 902B provides that notice of the proposed merger and of the right to dissent thereto must be given the shareholders. "There shall be included in, or enclosed with . . . notice [of meeting of shareholders to vote on plan of merger] a copy or a summary of the plan of merger or plan of consolidation, as the case may be, and . . . a copy of subsection A of section 908 and subsection B, C and D of section 515 of this act." Act of May 5, 1933, P.L. 364, §902B, as amended, 15 P.S. §2852-902B.

the plaintiff as a shareholder therein, that to refuse him the rights and remedies of a dissenting shareholder would in reality force him to give up his stock in one corporation and against his will accept shares in another? If so, the combination is a merger within the meaning of section 908A of the corporation law. See *Bloch v. Baldwin Locomotive Works,* supra. *Cf. Marks v. The Autocar Co.,* 153 F. Supp. 768 (D.C.E.D. Pa. 1954). See also *Troupiansky v. Henry Disston & Sons,* 151 F. Supp. 609 (D.C.E.D. Pa. 1957).

If the reorganization agreement were consummated plaintiff would find that the "List Alden" resulting from the amalgamation would be quite a different corporation than the "Glen Alden" in which he is now a shareholder. Instead of continuing primarily as a coal mining company, Glen Alden would be transformed, after amendment of its articles of incorporation, into a diversified holding company whose interests would range from motion picture theaters to textile companies. Plaintiff would find himself a member of a company with assets of $169,000,000 and a long-term debt of $38,000,000 in lieu of a company one-half that size and with but one-seventh the long-term debt.

While the administration of the operations, and properties of Glen Alden as well as List would be in the hands of management common to both companies, since all executives of List would be retained in List Alden, the control of Glen Alden would pass to the directors of List; for List would hold eleven of the seventeen directorships on the new board of directors.

As an aftermath of the transaction plaintiff's proportionate interest in Glen Alden would have been reduced to only two-fifths of what it presently is because of the issuance of an additional 3,621,703 shares to List which would not be subject to pre-emptive rights. In fact, ownership of Glen Alden would pass to the

stockholders of List who would hold 76.5% of the outstanding shares as compared with but 23.5% retained by the present Glen Alden shareholders.

Perhaps the most important consequence to the plaintiff, if he were denied the right to have his shares redeemed at their fair value, would be the serious financial loss suffered upon consummation of the agreement. While the present book value of his stock is $38 a share after combination it would be worth only $21 a share. In contrast, the shareholders of List who presently hold stock with a total book value of $33,000,000 or $7.50 a share, would receive stock with a book value of $76,000,000, or $21 a share.

Under these circumstances it may well be said that if the proposed combination is allowed to take place without right of dissent, plaintiff would have his stock in Glen Alden taken away from him and the stock of a new company thrust upon him in its place. He would be projected against his will into a new enterprise under terms not of his own choosing. It was to protect dissident shareholders against just such a result that this Court one hundred years ago in the *Lauman* case, and the legislature thereafter in section 908A, granted the right of dissent. And it is to accord that protection to the plaintiff that we conclude that the combination proposed in the case at hand is a merger within the intendment of section 908A.

Nevertheless, defendants contend that the 1957 amendments to sections 311 and 908 of the corporation law preclude us from reaching this result and require the entry of judgment in their favor. Subsection F of section 311 dealing with the voluntary transfer of corporate assets provides: "The shareholders of a business corporation which acquires by sale, lease or exchange all or substantially all of the property of another corporation by the issuance of stock, securities or other-

wise shall not be entitled to the rights and remedies of dissenting shareholders . . . ." Act of July 11, 1957, P. L. 711, 15 P.S. §2852-311F.

And the amendment to section 908 reads as follows: "The right of dissenting shareholders . . . shall not apply to the purchase by a corporation of assets whether or not the consideration therefor be money or property, real or personal, including shares or bonds or other evidences of indebtedness of such corporation. The shareholders of such corporation shall have no right to dissent from any such purchase." Act of July 11, 1957, P. L. 711, 15 P.S. §2852-908C.

Defendants view these amendments as abridging the right of shareholders to dissent to a transaction between two corporations which involves a transfer of assets for a consideration even though the transfer has all the legal incidents of a merger. They claim that only if the merger is accomplished in accordance with the prescribed statutory procedure does the right of dissent accrue. In support of this position they cite to us the comment on the amendments by the Committee on Corporation Law of the Pennsylvania Bar Association, the committee which originally drafted these provisions. The comment states that the provisions were intended to overrule cases which granted shareholders the right to dissent to a sale of assets when accompanied by the legal incidents of a merger. See 62 Ann. Rep. Pa. Bar Ass'n. 277, 284 (1957).[7] Whatever

---

[7] "The amendment to Section 311 expressly provides that a sale, lease or exchange of substantially all corporate assets in connection with its liquidation or dissolution is subject to the provisions of Article XI of the Act, and that no consent or authorization of shareholders other than what is required by Article XI is necessary. The recent decision in Marks v. Autocar Co., U.S.D.C.E.D. Pa., Civil Action No. 16075, is to the contrary. This amendment, together with the proposed amendment to Section 1104 expressly permitting the directors in liquidating the corporation to sell only

may have been the intent of the *committee,* there is no evidence to indicate that the *legislature* intended the 1957 amendments to have the effect contended for. But furthermore, the language of these two provisions does not support the opinion of the committee and is inapt to achieve any such purpose. The amendments of 1957 do not provide that a transaction between two corporations which has the effect of a merger but which includes a transfer of assets for consideration is to be exempt from the protective provisions of sections 908A and 515. They provide only that the shareholders of a corporation which acquires the property or purchases the assets of another corporation, *without more,* are not entitled to the right to dissent from the transaction. So, as in the present case, when as part of a transaction between two corporations, one corporation dissolves, its liabilities are assumed by the survivor, its executives and directors take over the management and control of the survivor, and, as consideration for the transfer, its stockholders acquire a majority of the shares of stock of the survivor, then the transaction is no longer simply a purchase of assets or acquisition of property to which sections 311F and 908C apply, but a merger governed by section 908A of the corporation

---

such assets as may be required to pay its debts and distribute any assets remaining among shareholders (Section 1108B now so provides in the case of receivers) have the effect of overruling Marks v. Autocar Co. . . . which permits a shareholder dissenting from such a sale to obtain the fair value of his shares. The Marks case relied substantially on Bloch v. Baldwin Locomotive Works, 75 D. & C. 24, also believed to be an undesirable decision. That case permitted a holder of stock of a corporation which *purchased* for stock all the assets of another corporation to obtain the fair value of his shares. That case is also in effect overruled by the new Sections 311F and 908C." 62 Ann. Rep. Pa. Bar Ass'n. 277, 284 (1957).

law. To divest shareholders of their right of dissent under such circumstances would require express language which is absent from the 1957 amendments.

Even were we to assume that the combination provided for in the reorganization agreement is a "sale of assets" to which section 908A does not apply, it would avail the defendants nothing; we will not blind our eyes to the realities of the transaction. Despite the designation of the parties and the form employed, Glen Alden does not in fact acquire List, rather, List acquires Glen Alden, *cf. Metropolitan Edison Co. v. Commissioner*, 98 F. 2d 807 (3rd Cir. 1938), *aff'd sub nom., Helvering v. Metropolitan Edison Co.*, 306 U.S. 522 (1939), and under section 311D[8] the right of dissent would remain with the shareholders of Glen Alden.

We hold that the combination contemplated by the reorganization agreement, although consummated by contract rather than in accordance with the statutory procedure, is a merger within the protective purview of sections 908A and 515 of the corporation law. The shareholders of Glen Alden should have been notified accordingly and advised of their statutory rights of dissent and appraisal. The failure of the corporate officers to take these steps renders the stockholder approval of the agreement at the 1958 shareholders' meeting invalid. The lower court did not err in enjoining the

---

[8] "If any shareholder of a business corporation which sells, leases or exchanges all or substantially all of its property and assets otherwise than (1) in the usual and regular course of its business, (2) for the purpose of relocating its business, or (3) in connection with its dissolution and liquidation, shall object to such sale, lease or exchange and comply with the provisions of section 515 of this act, such shareholder shall be entitled to the rights and remedies of dissenting shareholders as therein provided." Act of July 11, 1957, P.L. 711, 15 P.S. §2852-311D.

officers and directors of Glen Alden from carrying out this agreement.[9]

Decree affirmed at appellants' cost.

[9] Because of our disposition of this appeal, it is unnecessary for us to consider whether the plaintiff had any pre-emptive rights in the proposed issuance of newly authorized shares as payment for the transfer of assets from List, or whether amended sections 908C and 311F of the corporation law may constitutionally be applied to the present transaction to divest the plaintiff of his dissenter's rights.