Paul KAFANDO, Appellant,

v.

ERIE CERAMIC ARTS COMPANY,
Appellee.

Superior Court of Pennsylvania.

Argued Oct. 5, 2000.

Filed Dec. 6, 2000.

Edwin W. Smith, Erie, for appellant.

Richard W. Perhacs, Erie, for appellee.

BEFORE: HUDOCK, MUSMANNO and HESTER, JJ.

HUDOCK, J.:

¶ 1 Paul Kafando (Kafando) appeals from the order that denied his motion for summary judgment and granted the cross-motion for summary judgment filed by his former employer, Erie Ceramic Arts Company (Erie). We affirm.

¶ 2 The facts of this case are not at issue. Kafando was employed in Erie's production department from July 1996 through his discharge in April 1997. As a part of its benefits for all employees, Erie had instituted what it called a gainsharing

program and outlined the program in its employee manual. Through this plan, employees could receive bonuses in addition to their regular wages. The gainsharing program is based upon the profitability of the company and generates a pool of funds, which are then periodically distributed to eligible employees, in proportionate shares. Under the terms of the plan, an employee must not only have worked during the period in which profitability was calculated, but also must have been in Erie's employ on the date of distribution of the gainsharing checks in order to participate. Partial service during the calculation period does not entitle an employee to money from the gainsharing program.

¶ 3 While Kafando was employed during the calculation period in question, he was dismissed prior to the gainsharing program's distribution. Accordingly, Erie did not issue Kafando a gainsharing check. Kafando brought an action seeking payment of his portion of the gainsharing program. Following briefing and argument on the cross-motions for summary judgment, the trial court ruled that Kafando was not entitled to any payment under the gainsharing plan, and entered judgment accordingly. This appeal followed.

¶ 4 On appeal, Kafando maintains that the gainsharing benefit constitutes a wage or payment in accordance with the Pennsylvania Wage Payment and Collection Law, 43 P.S. sections 260.1–260.12 (the WPCL), and that he is entitled to payment under the WPCL.

¶ 5 Our standard of review regarding a matter in which the trial court has granted summary judgment is well settled:

> In reviewing the grant of summary judgment, we look to whether the trial court committed an error of law.

> Summary judgment may be granted only in cases where it is clear and free from doubt that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law. The moving party has the burden of proving the nonexistence of any genuine issue of material fact. The record must be viewed in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party.

> The entry of summary judgment is proper where the uncontraverted allegations in the pleadings, depositions, answers to interrogatories, admissions of record, and submitted affidavits demonstrate that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law.

*Rush v. Philadelphia Newspapers, Inc.,* 732 A.2d 648, 650–51 (Pa.Super.1999) (internal citations omitted).

¶ 6 Kafando argues that the gainsharing program is a wage under the WPCL. He asserts that, under the terms of the WPCL, Erie could no more refuse him a gainsharing payment based upon the fact that he had been discharged than it could refuse to issue a payroll check to an employee for the hours that employee had worked before discharge.

¶ 7 We begin with a consideration of the purposes and focus of the WPCL, as recently set forth by this Court:

> Pennsylvania enacted the WPCL to provide a vehicle for employees to enforce payment of their wages and compensation held by their employers. The underlying purpose of the WPCL is to remove some of the obstacles employees face in litigation by providing them with a statutory remedy when an employer breaches its contractual obligation to pay wages. The WPCL does not create an employee's substantive right to compensation; rather, it only establishes an employee's right to enforce payment of wages and compensation to which an employee is otherwise entitled by the terms of an agreement.

*Hartman v. Baker,* 766 A.2d 347, 352 (citations and internal quotation marks omitted).

¶ 8 The gainsharing program as set forth in Erie's employee handbook states that a payout is earned in each of ten periods of the fiscal year if the ratio of the total cost of goods to net sales is less than eighty-six percent. The monies in the gainsharing pool of funds accumulate through two calculation periods for each fiscal year, and may be positive or negative amounts during each respective period depending upon this ratio. Any money that remains in the gainsharing pool at the end of one of these calculation periods will be shared equally between Erie employees and the company. Gainsharing is paid to all full-time and part-time regular employees as a percentage of the gross payroll, and will be paid out between thirty and seventy-five days after the end of the relevant calculation period. Pertinent to our discussion is paragraph ten of the employee handbook, which contains a description of the program as follows:

> 10. An employee must be on the payroll the last day of the calculation period **and** when the Gainsharing checks are distributed in order to receive the bonus for the period.

Gainsharing Plan, dated 2/96, attached to Kafando's Brief in Support of the Motion for Summary Judgment, filed 1/10/00 (emphasis added).

¶ 9 Also pertinent to the resolution of this case is the definition of wages set forth in the WPCL.

> **"Wages."** Includes all earnings of an employe, regardless of whether determined on time, task, piece, commission or other method of calculation. The term "wages" also includes fringe benefits or wage supplements whether payable by the employer from his funds or from amounts withheld from the employes' pay by the employer.

43 P.S. § 260.2a. Further, fringe benefits or wage supplements are defined as follows:

> **"Fringe benefits or wage supplements."** Includes all monetary employer payments to provide benefits under any employe benefit plan [under ERISA] ...; as well as separation, vacation, holiday, or guaranteed pay; reimbursement for expenses; union dues withheld from the employes' pay by the employer; and any other amount to be paid pursuant to an agreement to the employe, a third party or fund for the benefit of employes.

*Id.*

■ ¶ 10 In the present case, the gainsharing plan does not qualify as earnings of an employee because the funds in the plan are not determined based upon an employee's time or task, piece or commission. Rather, the program is entirely dependent upon the ratio of the total cost of goods manufactured by Erie to Erie's net sales. The calculation is, thus, solely dependent upon company earnings, and not related to any work performed by the individual employees. We therefore must consider whether the gainsharing program could be considered a fringe benefit or wage supplement as defined by the WPCL.

■ ¶ 11 In considering the definition of fringe benefits and wage supplements as contained in the WPCL, we first note that the gainsharing plan does not involve any employee benefit plan as defined by ERISA, nor is the gainsharing plan a reimbursement for expenses or related to the payment of union dues. The money paid through the gainsharing plan likewise cannot be considered separation, vacation, or holiday pay for the same reason that the money in the plan is not earnings—because the fund is calculated in a manner that is entirely unrelated to any employment activities of the individual employees but rather is solely dependent upon Erie's earnings during the time period. There are, therefore, two possibilities left which would include the gainsharing plan in the WPCL definition of fringe benefits or wage supplements, "guaranteed" pay and

"any other amount to be paid pursuant to an agreement."

¶ 12 By the terms of the gainsharing plan set forth in the employee handbook, the plan can only be considered "guaranteed pay" if the conditions set forth in the handbook are met. The plan sets forth responsibilities of Erie employees and management; these can be described as goals designed to enhance the profitability and productivity of the company. Further conditions are set forth in paragraph ten of the program as quoted above; specifically, the employee must be on the payroll both on the last day of the calculation period and on the date that the gainsharing checks are distributed.[1] It is only if these conditions are met that the gainsharing payments are guaranteed. The conditions were not met in this case.

¶ 13 In the same vein, we conclude that the gainsharing program cannot be considered as a fringe benefit or wage supplement under the clause, "any other amount to be paid pursuant to an agreement to the employe." Pursuant to the agreement, Kafando had to remain in Erie's employ on both the last day of the calculation period and the date of distribution. He did not do so. No additional agreement was made between Erie and Kafando in this regard. Thus, the very terms of the agreement in question vitiate against the construction that Kafando suggests.

¶ 14 Moreover, the cases Kafando cites in support of his claim do not require a different result. In *Hartman v. Baker*, 2000 PA Super 140, this Court determined that an employment contract entered into between the employer and employee had created an equity interest in the business which constituted wages under the WPCL. The equity interest was offered to the appellee as an employee, and for no other reason unrelated to his status as an employee. Importantly, the equity interest in *Hartman* was offered pursuant to a binding contractual agreement between the parties. The employee had taken a reduction to his salary in consideration for obtaining an equity interest in the company. The terms of the contract in *Hartman* clearly distinguish that case from the instant one.

¶ 15 Kafando also cites *Bowers v. NETI Technologies, Inc.,* 690 F.Supp. 349 (E.D.Pa.1988). This reliance is likewise misplaced. In *Bowers,* the District Court found that a stock repurchase agreement constituted a wage or other fringe benefit in accordance with the provisions of the WPCL. The court stated that the repurchase payments "were certainly 'wages' within the broad definition of the WPCL in that they were payments pursuant to agreement, and they were offered to plaintiffs as employees, and not for some reason entirely unrelated to their employment by Phoenix." 690 F.Supp. at 353. Like in *Hartman,* however, the payments arose out of an employment contract and the parties agreed that the contractual terms had been complied with by the employees. In the present case, Kafando does not dispute that he has not fulfilled the clear contractual terms of the gainsharing agreement because he did not remain in Erie's employ at the time of distribution. This fact is dispositive of the issue.

¶ 16 After review, we conclude that the trial court did not err when it determined, as a matter of law, that Kafando was not entitled to payment from the gainsharing program. Accordingly, we affirm the order that granted summary judgment in favor of Erie.

¶ 17 Order affirmed.

---

1. Not relevant to our discussion are two exceptions set forth in paragraph ten, for employees who worked during the calculation period but are on a leave of absence or have been laid off on the date of distribution; and for employees who have retired or died prior to the date of distribution.