MICROSIGNAL, CORP, a Pennsylvania Corporation; and George Parks Appellants,

v.

MICROSIGNAL CORP, a Nevada Corporation, f/k/a Pro Glass Tech; Matthew McConaghy; Chris Puleo; Sherri Yavelak; Natahn Blumberg, M.D.

No. 04–1188.

United States Court of Appeals, Third Circuit.

Submitted Pursuant to Third Circuit LAR 34.1(a) Feb. 11, 2005.

Decided Feb. 22, 2005.

Jeffrey T. Morris, Bradford Woods, PA, for Appellants.

Arthur H. Stroyd, Jr., Reed Smith, Pittsburgh, PA, for Appellees.

Before BARRY, FUENTES, and VAN ANTWERPEN, Circuit Judges.

## OPINION OF THE COURT

VAN ANTWERPEN, Circuit Judge.

This is an appeal of a grant of declaratory and injunctive relief by the United States District Court for the Western District of Pennsylvania. For the following reasons, we affirm.

### I. Facts

The District Court made factual findings during a two-day bench trial. We shall recount only those facts pertinent to our holding. Appellant MicroSignal PA ("MS–PA"), a Pennsylvania corporation, claims as its principal asset a technology designed by its founder, Jeffrey D. Taft, Ph.D. This technology, "SLICES0," improves the quality and efficiency of magnetic resonance imaging systems through use of a novel algorithm. Appellant George Parks was a 10% shareholder in MS–PA, and served as its sole director. Sometime in June, 2002, MS–PA commenced negotiations concerning a potential reverse merger transaction with Pro Glass Technologies, Inc. ("Pro Glass"), a Nevada corporation. On June 27, 2002, Appellant Parks (as President of MS–PA) signed a Letter of Intent (later amended on July 3, 2002) concerning a "business combination" between MS–PA and Pro Glass, described as an asset-for-stock transaction.[1] On July 8, 2002, Pro Glass issued a press release, initialed by Appellant Parks, stating that Pro Glass and MS–PA had entered a "definitive agreement" by which Pro Glass would acquire all of the assets and operations of MS–PA, stating that this acquisition was subject to "approval by both companies [sic] Board of Directors and shareholders." District Court Memorandum at 7. On or about July 24, 2002, Pro Glass sent MS–PA a draft Merger Agreement which the District Court found was substantially similar in all material respects to the Letter of Intent, as amended.

On August 1, 2002, a special meeting of the shareholders of MS–PA was noticed for August 9, 2002. That notice stated that a special meeting was being held to "consider and approve the business combination between [MS–PA] and Pro Glass Technologies, Inc. [ ] in exchange for shares of [Pro Glass]." District Court Memorandum at 9. The Shareholder Proxy set forth in great detail the terms of the proposed transaction. At the meeting, a majority of the shareholders voted in favor of the transaction.[2]

On August 11, 2002, counsel for Pro Glass sent a letter to counsel for MS–PA that disclosed that the transaction would now be a stock-for-stock transaction. On or about August 22, 2002, Appellant Parks signed the Agreement of Purchase and Sale, which provided for the sale of assets in connection with the reverse merger of MS–PA into Pro Glass.

---

**1.** The District Court noted that "[a]lthough the transaction eventually changed to a stock for stock transaction, the nature and amount of consideration ... to be received by the MSC–PA shareholders remained unchanged." District Court Memorandum and Order at 6 ("District Court Memorandum").

**2.** Apparently, a second meeting was held on August 19, 2002 to discuss the same transaction after notice was properly sent at least ten days in advance of the meeting.

The Merger Agreement was executed on September 6, 2002, and the Articles of Mergers and Addendum to the Merger Agreement were executed on September 11, 2002. The District Court found that the Merger Agreement was substantially similar in all material respects to the deal outlined in the Letter of Intent (as amended), the Shareholders' Proxy, and the prior drafts of the Merger Agreement exchanged between the parties.[3]

On or about September 23, 2002, the Articles of Merger were filed with the Nevada Secretary of State's office. A day later, Appellant Parks was introduced to approximately fifty potential investors as a director of the new company, MicroSignal NV ("MS–NV"). A registration statement, signed by Appellant Parks, was filed with the Securities and Exchange Commission on October 2, 2002. MS–NV thereafter was traded publicly.

Some time in either late October or November, 2002, Appellant Parks began an effort to set aside the transaction, claiming that the reverse merger never took place or that the transaction occurred because of fraud. Despite the fact that more than 95 million shares of MS–NV stock had been distributed to the public,[4] Appellant Parks continued to operate MS–PA and claim ownership of the SLICES0 technology and the MicroSignal name. On his own initiative, Appellant Parks sent letters to those conducting business with MS–NV claiming the merger never took place.

Appellants filed an action in state court on October 16, 2003, alleging eight causes of action, including a claim under the Lanham Act. It was removed to the United States District Court for the Western District of Pennsylvania on October 21, 2003. Both parties agreed to bypass the preliminary injunction hearing and proceed directly to a permanent injunction/declaratory judgment trial. On December 17 and 18, 2003, the trial court heard argument on Appellants' request that the District Court declare the merger void *ab initio*, and on Appellees' request to both declare the merger valid and order the appropriate individuals to file the Articles of Merger with the Secretary of State for the Commonwealth of Pennsylvania. The District Court entered a Memorandum and Order granting injunctive and declaratory relief in favor of Appellees on December 22, 2003. This appeal of that Order followed.

## II. Jurisdiction and Standard of Review

The District Court had jurisdiction over this case under 28 U.S.C. §§ 1331, 1367,[5] and 1441. We have jurisdiction pursuant to 28 U.S.C. § 1291, as this is an appeal of a final order of the District Court.

Our review of a district court's findings of fact is circumscribed: we will reverse a finding only if it is clearly erroneous. *Medtronic AVE, Inc. v. Advanced Cardio-*

---

**3.** The final Merger Agreement provides for the same consideration to the shareholders of MS–PA as set forth in the earlier drafts of the merger documents, and contains substantially the same representations, warranties and conditions to closing as contemplated by the earlier documents. District Court Memorandum at 12.

**4.** Approximately 48 million of those shares are freely traded on the Over the Counter Bulletin Board. District Court Memorandum at 15.

**5.** The original complaint, filed in the Pennsylvania Court of Common Pleas, Allegheny County, alleged eight causes of action, one of which claimed a violation of 15 U.S.C. § 1125(a), a section of the Lanham Act. The remaining seven causes of action arise from the same factual nucleus so as to "form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a); *see also United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

*vascular Sys. Inc.*, 247 F.3d 44, 53–4 (3d Cir.2001). A district court's decision to grant declaratory relief will not be reversed in the absence of an abuse of discretion, and in making this determination we will exercise plenary review over a district court's conclusions of law. *Interdynamics, Inc. v. Wolf,* 698 F.2d 157, 167 (3d Cir.1982) (*citing Exxon Corp. v. Federal Trade Commission,* 588 F.2d 895, 900 (3d Cir.1978)); *Silverman v. Eastrich Multiple Investor Fund, L.P.,* 51 F.3d 28, 30 (3d Cir.1995).

### III. Discussion

"Except in matters governed by the Federal Constitution or by Acts of Congress, the law to be applied in any case is the law of the State." *Erie R. Co. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). "In so doing, we are not free to impose our own view of what state law should be; we are to apply state law as interpreted by the state's highest court.... In the absence of guidance from that court we are to refer to decisions of the state's intermediate appellate courts for assistance in determining how the highest court would rule." *McKenna v. Pacific Rail Service,* 32 F.3d 820, 825 (3d Cir.1994) (citations omitted). We therefore look to the Pennsylvania Business Corporation Law and the courts of the Commonwealth for guidance on this matter.

Appellants contend that the merger was never properly effectuated, and challenge it on three fronts: (a) the shareholder notice was defective; (b) the shareholders did not approve of the transaction; and (c) the Articles of Merger were not filed with the Pennsylvania Secretary of State. The facts underlying these challenges are un-

disputed. Therefore, we must determine whether or not any of these points are sufficient bases on which to void the merger.

### A. Shareholder Notice.

■ Appellants first contend that the merger is void *ab initio* because the shareholder notice of August 1, 2002 was defective.[6] They claim that this notice violated the Pennsylvania Business Corporation Law, specifically section 1704(b)(1) (notice must be sent at least 10 days before meeting), section 1571(d) (notice must contain a copy of dissenters' rights), and section 1923 (notice must include a copy or summary of the proposed transaction). We need not concern ourselves with whether or not the notice was defective because Appellants cannot challenge the merger on the grounds that the shareholder notice was defective. In Pennsylvania, the ability of a party to challenge a merger can be summarized as follows:

> *It is the aggrieved shareholder, and not the corporate violator of the law, who has the option of asking a court to rescind a transaction or declare a merger void.* To permit a culpable defendant to prevent the victim from recovering based on the violator's own errors would be inequitable.

13 Summ. Pa. Jur.2d Business Relationships § 10:23 (citations omitted) (emphasis added); *see also First Union Nat'l Bank v. Quality Carriers Inc.,* 48 Pa. D. & C.4th 1, 11, 2000 WL 33199269 (2000) (stating that, because the Business Corporation Law exists primarily for the protection of corporate shareholders, corporate personnel responsible for any deficiencies under that chapter cannot claim them as a de-

---

**6.** Appellants make no assertions that the second notice sent on August 9, 2002 was defective, and we therefore do not discuss what impact this second notice may have on Appellants' argument.

fense). We find the discussion and holding of *First Union* to be persuasive. The District Court found that Appellant Parks was responsible for many, if not all, of the defects in the August 1 shareholder notice that MS–PA now points to for relief. We agree. The notice was signed by Appellant Parks in his capacity as CEO and Secretary of MS–PA. It is well-settled that a corporation is a creature of legal fiction which can act only through its officers, directors and other agents, *Lokay v. Lehigh Valley Cooperative Farmers Inc.*, 342 Pa.Super. 89, 492 A.2d 405, 408 (1985), and acts of a corporate agent which are performed within the scope of his authority are binding upon the corporate principal. *Daniel Adams Assocs. Inc. v. Rimbach Publ'g Inc.*, 360 Pa.Super. 72, 519 A.2d 997, 1000 (1987). MS–PA cannot now use the defects of its own making (by and through Appellant Parks) to void the merger between itself and Pro Glass. We conclude that a Pennsylvania court would not permit MS–PA to void the merger, and consequently we refuse to do so.

█ Appellant Parks, while in the position to complain about defects in the notice process as a shareholder that he created as a corporate officer, fares no better when we consider the policy of shareholder protection underlying the Business Corporation Law. Having attended the shareholders meeting, he has waived any objection to insufficient notice. 15 Pa. Cons.Stat. Ann. § 1705(b) (West 2005). Furthermore, he was fully aware of the matter to be discussed.[7] He cannot now use these notice defects to attack the merger. Because no other shareholder has lodged a complaint regarding the defective notice,

the merger will not be voided for the technical deficiencies cited by Appellants.

### B. Shareholder approval of the merger

Appellants next contend that the shareholders of MS–PA never approved the merger with Pro Glass. Specifically, they argue that what was submitted for shareholder approval was an asset-for-stock transaction. We must therefore determine what the MS–PA shareholders approved at the two shareholders meetings.

Nearly fifty years ago, the Supreme Court of Pennsylvania held that "it is no longer helpful to consider an individual transaction in the abstract and solely by reference to the various elements therein determine whether it is a 'merger' or a 'sale.' Instead, to determine properly the nature of a corporate transaction, we must refer not only to all the provisions of the agreement, but also to the consequences of the transaction and to the purposes of the provisions of the corporation law said to be applicable." *Farris v. Glen Alden Corp.*, 393 Pa. 427, 143 A.2d 25, 28 (1958). "Merger" is not defined in the Business Corporation Law, but has been defined by the courts as the uniting of two or more corporations by the transfer of property to one of them, which continues in existence, the others being merged into it. *E.g.*, *Seven Springs Farm, Inc. v. Croker*, 748 A.2d 740, 746–47 (2000). Merger is a corporate act that, by operation of law, results in extinction of the constituent corporation's stock, *id.*, and is distinct from an asset sale. 13 Summ. Pa. Jur.2d Business Relationships § 10:22.

The shareholders notice described the proposed transaction as one where MS–PA

**7.** It is unclear from the record whether or not Appellant Parks actually knew of the rights provided to dissenters under section 1571(d), which is one of the claimed defects in the notice. It is clear, however, that as the sole member of MS–PA's board, he recommended that the transaction be approved. He certainly was not a dissenter. Equity again counsels against allowing him to use a technical defect in the notice process to support his claim.

would "sell all [its] assets and operations ... pursuant to a merger with [Pro Glass] or a subsidiary formed for such purpose, and, subject to the terms of the proposed Agreement, [Pro Glass] has agreed to purchase [MS–PA]." (Appellants' App. at 272.) MS–PA's assets and operations would be paid for "by the issuance of a maximum 17,051,344 common shares of [Pro Glass].... Assuming issuance of the maximum number of shares, [MS–PA] will own approximately 80% of the issued and outstanding common shares of the surviving entity." *Id.* The result of the transaction would be a public company better equipped to raise capital. *Id.* at 273.

■ We agree with the District Court's conclusion that the transaction approved by MS–PA's shareholders was a merger, in substance if not in name. While the initial plan does not call for the dissolution of MS–PA (as is usually the case in a merger), it does call for the transfer of all assets and operations to a new public entity. This new entity would be predominantly owned by the shareholders of MS–PA, which itself would be acquired by Pro Glass as a wholly-owned subsidiary.[8] The resultant creation would have the practical effect of a merger, and hence we view it as such. Our conclusion is further buoyed by the fact that, despite the characterization of the instant transaction as a "merger" in several letters to shareholders following ratification of the plan, no shareholder (save of course for Appellant Parks) has dissented or otherwise claimed that this was not the type of transaction that was approved at the shareholders meeting.

Our holding is also consonant with the Business Corporation Law's view on equitable relief with regard to fundamental business transactions. While it is clear that the Commonwealth has by statute expressly abolished the doctrine of *de facto* merger[9] as it existed in *Marks v. Autocar Co.*, 153 F.Supp. 768 (E.D.Pa.1954), the Business Corporation Law mandates that "[a] transaction that in form satisfies the requirements of this subpart may be challenged by reason of its substance only to the extent permitted by section 1105...." 15 Pa. Cons.Stat. Ann. § 1904 (West 2005).[10] Section 1105 in turn states that "[a] shareholder of a business corporation shall not have any right to obtain, in the absence of fraud or fundamental unfairness, an injunction against any proposed plan or amendment of articles authorized under any provision of this subpart." Appellants have alleged nothing on their part that can be cast as either fraud or fundamental unfairness to them within the meaning of the statute, and in fact urge

8. One of the key requirements for a merger under traditional corporation law doctrine is continuity of shareholders, which is found where the purchaser corporation exchanges its own stock as consideration for the seller corporation's assets so that the shareholders of the seller corporation become a constituent part of the purchaser corporation. *See, e.g., Dayton v. Peck, Stow and Wilcox Co. (Pexto)*, 739 F.2d 690, 693 (1st Cir.1984) (applying Massachusetts law). Such continuity is present here.

9. The abolished *"de facto* merger" doctrine must be distinguished from the judge-made device for avoiding patent injustice that might

befall a party simply because a merger has been called something else.

10. Section 1105's Committee Comment explains that section 1904 was "intended to make Pennsylvania an attractive situs for business organization by assuring the incorporators that the Pennsylvania courts will not be authorized to recharacterize a transaction on a form-over-substance basis. The goal of the Business Corporation law was to reject as emphatically as possible that practice of the 1940's and 1950's, which gave Pennsylvania law a reputation of unpredictability and which was incompatible with modern business and financial practices."

upon us the same type of form-over-substance argument we are forbidden from entertaining. The plan ratified by MS–PA's shareholders sufficiently described the subsequent merger, and the District Court properly denied Appellants' request for injunctive relief.

### c. Failure to file the Articles of Merger

■ Finally, we conclude that the failure to file the Articles of Merger with the Pennsylvania Secretary of State, a purely ministerial act, is an insufficient ground on which to void this merger:

> [a] merger that fails to comply with the Business Corporation Law is deemed voidable, not void. This approach allows a court to evaluate the significance of the defects in the merger process and to weigh the seriousness of any harm done to the aggrieved parties before declaring the merger invalid. It also allows for a determination of whether the errors were made in good faith and what additional damage the injured party may suffer if the merger is voided. Furthermore, the practical interests of third parties are protected by this position.

13 Summ. Pa. Jur.2d Business Relationships § 10:23 (citations omitted). In *First Union*, the Court of Common Pleas for Philadelphia County held that if concerns of equity or impracticality counseled against voiding a voidable merger, a court could refrain from extolling form over substance and validate an otherwise improper merger. *See First Union Nat'l Bank*, 48 Pa. D. & C.4th at 20–27. Although this decision was rendered by a lower state court, we find its discussion and holding persuasive in the matter before us.

The District Court made the following findings of fact: (1) the newly formed MS–NV filed a registration statement and Form 8–K with the Securities and Exchange Commission; [11] (2) NASD changed Pro Glass's name to MicroSignal NV and issued a new trading symbol; (3) in September, 2002, Appellant Parks met with approximately 50 potential investors and was introduced as a director of MS–NV; (4) at that meeting, three persons, including Appellant Parks, were elected to MS–NV's Board of Directors, and later held themselves out to the public as being directors; (5) in October, 2002, MS–NV stock began public trading; (6) by December, 2003, more than 95 million shares of MS–NV had been distributed to the public, and approximately 48 million of those shares were freely traded on the Over the Counter Bulletin Board; and (7) MS–NV has spent significant resources in its efforts to sustain funding for the public company and to bring the SLICES0 technology to market. Had these been the only findings made, we would still be convinced that it is both impracticable and inequitable to dismantle this merger.[12] We are particularly persuaded that this is the proper course by the District Court's findings that Appellant Parks participated in dealings with the SEC and potential investors *as a director of MS–NV*.

While it is correct that the Articles of Merger were never filed with the Pennsylvania Secretary of State, it would be far

---

**11.** The District Court found that Appellant Parks signed the SEC registration statement that was filed on October 2, 2002. We consider this act of signing the statement to have waived any argument Appellants may have had concerning their power to terminate the merger under the agreement.

**12.** Indeed, with respect to the shareholders, a particularly strong argument can be made that the failure to file the Articles of Merger should be overlooked because of the fundamental unfairness to the shareholders that would result if the merger were now voided.

too impracticable to dismantle this merger and return the parties to their positions *status quo ante.* Moreover, it would be inequitable to punish those who have traded or held MS–NV stock without knowledge of this oversight, especially since no person aside from Appellant Parks has lodged any sort of complaint concerning this transaction. We therefore conclude that the considerations of equity discussed in *First Union* counsel against voiding this merger.

For these reasons, we affirm the decision of the District Court.