**GEM Building Contractors and Developers, Inc. v. Patriot Concrete Pumping & Trucking Co., LTD**

C.P. of Lawrence County, No. 11421 of 2009

*Christopher P. Skatell*, for plaintiff.
*Paul R. Robinson*, for defendants.

COX, *J.*, October 23, 2013—Before the court for disposition is the motion for partial summary judgment filed on behalf of Patriot Pumping & Laser Screeding, Ltd., which argues that Patriot Pumping & Laser Screeding, Ltd., cannot be held liable under the theory of successor liability as it did not expressly agree to assume the debts of Patriot Concrete Pumping & Trucking Co., Ltd., and it is not a continuation of that business.

The plaintiff entered into a contract with Patriot Concrete Pumping & Trucking Co., Ltd. (hereinafter "Patriot Trucking"), the predecessor to Patriot Concrete & Laser Screeding, Ltd. (hereinafter "Patriot Laser Screeding"), in which Patriot Trucking agreed to supply concrete pumping and laser screeding services to the plaintiff in connection with a project at Walgreen Drug Stores in New Castle, Lawrence County, Pennsylvania. Patriot Trucking provided the requested services on November 2, 2005, however, the plaintiff avers that it failed to properly operate the screeding equipment, which caused the concrete to fall short of the tolerances for thickness, flatness and levelness required by the project specifications. Those errors caused the plaintiff to incur additional costs to repair the defective slab of concrete and replace the portions that could not be repaired. As a result, the plaintiff filed suit claiming that Patriot Concrete Pumping & Trucking, Co., Ltd., breached an oral contract and Patriot Concrete & Laser Screeding, Ltd., is liable for that breach as a successor in interest to Patriot Concrete Pumping & Trucking, Co., Ltd., as it is merely a continuation of the selling entity.

Gary Parsons, the owner of Patriot Trucking, testified at his deposition that he had discussions with Jim Davis in late 2004 to early 2005 concerning Mr. Parsons selling the

assets of Patriot Trucking to Mr. Davis because Mr. Parsons did not have enough time to dedicate to Patriot Trucking as he was also running Parsons Concrete. Mr. Davis was an employee of Patriot Trucking first as a pump operator and laser screed operator, and later moved into management. Mr. Davis purchased all of the assets of Patriot Trucking through the asset purchase agreement that states the buyer was not assuming any liabilities from the seller, Patriot Trucking. In addition, Patriot Trucking agreed to indemnify Patriot Laser Screeding for defending against any such claims. Moreover, Patriot Laser Screeding purchased the assets of Patriot Trucking for $1,952,722.93. Mr. Parsons also signed a covenant not to compete agreeing to not compete for business with Patriot Laser Screeding for a period of 5 years. Mr. Parsons later forgave approximately $300,000 of that debt. Mr. Davis testified that he was the sole owner of Patriot Laser Screeding and he was targeting federal work as a minority-owned business. He obtained funding for the purchase of assets through Unison Bank. Patriot Laser Screeding continued to operate out of the same facility as Patriot Trucking formerly operated with the lease being transferred from Patriot Trucking to Patriot Laser Screeding. Patriot Trucking did not retain any assets under the asset purchase agreement. Mr. Davis, acting on behalf of Patriot Laser Screeding, sent a letter to existing customers informing them that Mr. Parsons is no longer associated with Patriot Laser Screeding and ensuring them that the new company would provide the same high quality products and services. The letter also stated that this was an internal change and it would not affect the overall company policy or manner of conducting business.

Patriot Laser Screeding has now filed this motion for partial summary judgment arguing that it cannot be held

liable under a theory of successor liability because it is a separate entity and did not merge or consolidate with Patriot Trucking.

The purpose of the summary judgment rule is to eliminate cases prior to trial where a party cannot make out a claim or defense after the relevant discovery has been completed. *Miller v. Sacred Heart Hospital,* 753 A.2d 829 (Pa. Super. 2000). The mission of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for a trial. The summary judgment rule exists to dispense with a trial of a case or, in some matters, issues in a case, where a party lacks the beginnings of evidence to establish or contest a material issue. *Ertel v. Patriot-News Company,* 544 Pa. 93, 674 A.2d 1038 (1996), *reargument denied,* (1996), *certiorari denied,* 519 U.S. 1008 (1996).

Any party may move for summary judgment in whole or in part as a matter of law whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report or if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which, in a jury trial, would require the issues to be submitted to a jury. Pa.R.C.P. No. 1035.2. However, summary judgment is only appropriate when discovery relevant to the motion has been completed. *Id.* Summary judgment may be granted only in cases where it is clear and free from doubt that there is no genuine issue as to any material fact and that the moving party is entitled

to a summary judgment as a matter of law. *Kafando v. Erie Ceramic Arts Co.*, 764 A.2d 59, 61 (Pa. Super. 2000) (citing *Rush v. Philadelphia Newspaper, Inc.*, 732 A.2d 648, 650-651 (Pa. Super. 1999)).

The moving party bears the burden of proving the non-existence of any genuine issue of material fact. *Kafando, supra.* A material fact, for summary judgment purposes, is one that directly affects the outcome of the case. *Gerrow v. Shincor Silicones, Inc.*, 756 A.2d 697 (Pa. Super. 2000); *Kuney v. Benjamin Franklin Clinic*, 751 A.2d 662 (Pa. Super. 2000). The non-moving party must adduce sufficient evidence on issues essential to his case on which he bears the burden of proof such that a jury could return a verdict in his favor. Failure to adduce this evidence establishes that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Ertel, supra.* The non-moving party must demonstrate that there is a genuine issue for trial and may not rest on averments in its pleadings. *DeSantis v. Frick Company*, 745 A.2d 624 (Pa. Super. 1999); *Merriweather v. Philadelphia Newspaper, Inc.*, 453 Pa. Super. 464, 469-472, 684 A.2d 137, 140 (1996).

When determining whether to grant a motion for summary judgment, the court must view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. *Hughes v. Seven Springs Farm, Inc.*, 563 Pa. 501, 752 A.2d 339 (2000); *Dean v. Commonwealth Department of Transportation*, 561 Pa. 503, 751 A.2d 1130 (2000). Summary judgment is proper only when the uncontroverted allegations in the pleadings, depositions, answers to interrogatories,

admissions of record, and submitted affidavits demonstrate that no genuine issue of material fact exists, and that the moving party is entitled to judgment as a matter of law. *P.J.S. v. Pennsylvania State Ethics Comm'n*, 555 Pa. 149, 153, 723 A.2d 174, 175 (1999); *Basile v. H&R Block*, 761 A.2d 1115 (Pa. Super. 2001); *Kuney v. Benjamin Franklin Clinic*, 751 A.2d 662 (Pa. Super. 2000); *Stevens Painton Corporation v. First State Insurance Company*, 746 A.2d 649 (Pa. Super. 2000).

Only when the facts are so clear that reasonable minds cannot differ, a trial court may properly enter summary judgment. *Basile, supra.* If there are no genuine issues of material fact in dispute or if the non-moving party has failed to state a prima facie case, summary judgment may be granted. *Dudley v. USX Corporation*, 414 Pa. Super. 160, 606 A.2d 916 (1992). Thus, a proper grant of summary judgment depends upon an evidentiary record that either (1) shows the material facts are undisputed or (2) contains insufficient evidence of facts to make out a prima facie cause of action of defense. *Rauch v. Mike-Mayer*, 783 A.2d 815 (Pa. Super. 2001). The trial court must confine its inquiry when confronted with a motion for summary judgment to questions of whether material factual disputes exist. *Township of Bensalem v. Moore*, 152 Pa. Cmwlth. 540, 620 A.2d 76 (1993). It is not the function of the Court ruling on a motion for summary judgment to weigh evidence and to determine the truth of the matter. *Keenheel v. Pennsylvania Securities Commission*, 143 Pa. Cmwlth. 494, 579 A.2d 1358 (1990).

In regards to successor liability, it is well-established in Pennsylvania that when one company sells all of its assets to another company, the purchaser is not liable for

debts or liabilities of the seller merely because the buyer acquired the seller's property. *Continental Ins. Co. v. Schneider, Inc.*, 582 Pa. 591, 599, 873 A.2d 1286, 1291 (2005) (citing *Hill v. Trailmobile*, 412 Pa. Super. 320, 603 A.2d 602, 605 (1992)). "This general rule of non-liability can be overcome, however, if it is established that (1) the purchaser expressly or implicitly agreed to assume liability, (2) the transaction amounted to a consolidation or merger, (3) the purchasing corporation was merely a continuation of the selling corporation, (4) the transaction was fraudulently entered into to escape liability, or (5) the transfer was without adequate consideration and no provisions were made for creditors of the selling corporation." *Id.*, 582 Pa. at 599-600, 873 A.2d at 1291.

The plaintiff in this case asserts that Patriot Laser Screeding is liable under the theory of successor liability as it is merely a continuation of Patriot Trucking. In *Fizzano Bros. Concrete Products, Inc. v. XLN, Inc.*, 615 Pa. 242, 42 A.3d 951 (2012), the Pennsylvania Supreme Court addressed the issue of whether the purchasing corporation was a continuation of the selling corporation. In *Fizzano*, the appellant purchased a license for accounting software manufactured by System Development Group, Inc. (hereinafter "SDG") to streamline its ability to track sales, maintain accounts receivable and improve record keeping. The appellant was unable to implement the software. XLN acquired the stocks, assets and liabilities of SDG. The appellant filed suit against XLN for breach of contract and breach of express warranty from the failure of the software's implementation. A company known as XLNT purchased XLN's assets, including the software at issue. The appellant then joined XLNT and its president claiming that XLNT and XLN entered into

a fraudulent transfer of assets. XLNT argued that it, as a mere purchaser of assets, is not potentially liable to the appellant. In response, the appellant asserted that XLNT was liable under the exceptions to successor non-liability regarding the asset sale being a *de facto* merger and the purchasing corporation was merely a continuation of the selling corporation. It must be noted that the primary asset XLN purchased from SDG, and XLNT purchased from XLN was the right to license the software. The appellant filed a motion for summary judgment against XLN, which was granted by the trial court in the amount of $114,105 as the motion went unanswered by XLN. The case against XLNT proceeded to a three-day bench trial resulting in a verdict for the appellant in the amount of $114,000 because the trial court concluded that the transaction between XLNT and XLN was a *de facto* merger and XLNT was a mere continuation of XLN. XLNT appealed to the Superior Court of Pennsylvania, which reversed the trial court as it held the record did not support the trials court's findings for a *de facto* merger and there was no continuity of ownership between XLN and XLNT. The appellant then filed an appeal to the Supreme Court of Pennsylvania.

The *Fizzano* court explained that the traditional approach is to be utilized for determining whether a *de facto* merger occurred when it is a breach of contract claim. *Id.*, 615 Pa. at 266, 42 A.3d at 965. Those factors are as follows: "(1) continuity of ownership; (2) a cessation of ordinary business and dissolution of the predecessor as soon as practically and legally possible; (3) assumption by the successor of the liabilities ordinarily necessary for the uninterrupted continuation of the business of the predecessor, and (4) a continuity of management,

personnel, physical location, aspects, and general business operation." *Id.*, 615 Pa. at 262-263, 42 A.3d at 962 (quoting *Commonwealth v. Lavelle*, 382 Pa. Super. 356, 555 A.2d 218, 227 (1989)). Not all of the factors must be present, they are merely indicators that tend to demonstrate a *de facto* merger. *Id.*, The court also noted that the *de facto* merger exception requires a continuity of ownership between the predecessor and successor corporations. *Id.*, 615 Pa. at 266, 42 A.3d at 965 (citation omitted). "Even if the corporation sells to another corporation its entire business operation and all its assets, in exchange for some consideration other than stock, the two corporate entities remain distinct and intact. The corporate entities have not merged, and each is liable for its own debts, absent fraud or one of the other exceptions [to successor liability] listed above." *Id.*, 615 Pa. at 267-268, 42 A.3d at 966 (quoting *Bud Antle, Inc. v. Eastern Foods, Inc.*, 758 F.2d 1451, 1458 (11th Cir. 1985)). The *Fizzano* court explained that a court must look beyond the superficial formalities of a transaction and examine the transactional realities and the consequences of the transaction to determine if a *de facto* merger occurred. *Id.*, 615 Pa. at 272, 42 A.3d at 968 (citing *Farris v. Glen Alden Corp.*, 393 Pa. 427, 143 A.2d 25, 28 (1958)).

The court emphasized that the four shareholders of SDG sold their shares to XLN, which is a corporation owned by investment companies. XLN then sold its assets to XLNT, which was also formed to invest in the software initially sold by SDG. However, the two principal shareholders of SDG held important positions with XLN and XLNT, which were apparently formed to invest in the development of the software. *Id.*, 615 Pa. at 274, 42 A.3d at 969-970. Thus, there was a continuity of ownership

between the shareholders of SDG and XLN or XLNT. *Id.*, 615 Pa. at 274, 42 A.3d at 970. The *Fizzano* court overturned the Superior Court of Pennsylvania because the Superior Court focused on the formalities of the *de facto* merger and ignored the case law presented in *Farris* and courts from other jurisdictions regarding continuity of ownership. *Id.* It must be noted that the *Fizzano* court did not provide a suggested result concerning whether a *de facto* merger occurred, but merely rejected the Superior Court's emphasis of form over substance. *Id.* The court ultimately held, "Continuity of ownership or stockholder interest in some form must be shown, but the manner by which it may be shown is more extensive and attuned to the transactional realities than Superior Court's holding supports." *Id.*

In the case *sub judice*, Gary Parsons, the president of Patriot Trucking, contacted Jim Davis in late 2004 and early 2005 to determine if he was interested in purchasing Patriot Trucking. Mr. Davis agreed to purchase Patriot Trucking for $1,952,722.93 and created Patriot Laser Screeding. Subsequently, the parties entered into the asset purchase agreement, which stated that Patriot Laser Screeding would not assume the debts or liabilities of Patriot Trucking. In fact, Mr. Parsons was not aware of any debts or liabilities owed by Patriot Trucking at that time. Patriot Trucking promised to indemnify Patriot Laser Screeding for any costs associated with defending a claim regarding Patriot Trucking's debts or liabilities. Mr. Parsons also signed a non-compete agreement in which he agreed not to compete with Patriot Laser Screeding for a period of five years. He explained that he wanted to concentrate his efforts on his other business. Prior to the transaction, Mr. Davis was a pump operator and laser

screed operator for Patriot Trucking and was promoted to management. After the transaction, Mr. Davis was the sole owner of Patriot Laser Screeding and he hired his wife, who was not employed by Patriot Trucking, as vice president. The court notes that the concrete slab which is the subject of this suit was poured on November 2, 2005, and the transfer of assets from Mr. Parsons to Mr. Davis occurred on December 24, 2005. The court finds it unlikely that the transfer was negotiated and effectuated that quickly in an attempt to avoid liability. It is more likely that it was a negotiated agreement to transfer the entirety of the business and assets from Mr. Parsons to Mr. Davis.

Based on the evidence presented to the court, the plaintiff has failed to demonstrate that liability could be imposed upon Patriot Laser Screeding based upon successor liability. First, Patriot Laser Screeding did not agree to assume the debts or liabilities as evidenced by the asset purchase agreement, which contained a clause stating the same. Moreover, there is no evidence that the transaction was entered into fraudulently to avoid liability as Mr. Parsons testified that he was unaware of any liabilities or debts prior to entering the agreement and there was clearly adequate consideration as Mr. Davis agreed to pay $1,952,722.93 for the assets owned by Patriot Trucking. Although, Mr. Parsons decided to forgive $300,000.00 from the purchase price at a later time, Mr. Davis still paid adequate consideration in the amount of approximately $1,652,722.93.

Thus, the court must focus its inquiry on whether the transaction amounted to a consolidation or merger and was the purchasing corporation merely a continuation of

the selling corporation. As the *Fizzano* court stated, there must be continuity of ownership to find that a merger has occurred or the purchasing corporation was a continuation of the selling corporation. In the current case, Mr. Davis, the purchaser, was an employee of Patriot trucking prior to the transaction; however, he did not have an ownership interest in Patriot Trucking. He did not obtain an ownership interest until he entered the asset purchase agreement with Mr. Parsons. In addition, Mr. Parsons was the sole owner of Patriot Trucking until his ownership interest was divested in the asset purchase agreement. At that time, Mr. Parsons no longer retained any ownership interest in the business. Instead, Mr. Parsons focused on Parsons Concrete, which was his other business venture. In fact, Mr. Parsons signed a non-compete agreement which indicates that he was completely removed from the new company. Mr. Davis also explained that he entered the transaction to pursue federal contracts for minority business owners, which could not be pursued if Mr. Parsons retained an ownership interest. Furthermore, management personnel were altered by the addition of Mr. Davis's wife as vice president of Patriot Laser Screeding. In *Fizzano*, two principal shareholders retained important positions with XLN and XLNT. Conversely, in the current case, Mr. Parsons, as owner of Patriot Trucking, did not retain any ownership interest or management position with Patriot Laser Screeding. The court finds that there is no continuity of ownership between Patriot Trucking and Patriot Laser Screeding. Therefore, the plaintiff has failed to provide sufficient evidence to impose successor liability upon Patriot Laser Screeding.

For the reasons set forth in this opinion, the court grants the defendant's motion for partial summary judgment.

## ORDER OF COURT

Now this 23rd day of October, 2013, this case being before the court for disposition of the motion for partial summary judgment filed by the defendant Patriot. Pumping & Laser Screeding, LTD. with the plaintiff GEM Building Contraactors and Developers, Inc. appearing through counsel, Christopher P. Skatell, Esquire and the defendant Patriot Pumping & Laser Screeding, LTD. appearing through counsel, Paul R. Robinson, Esquire and after review of the various briefs and reply brief and a complete and through review of the applicable record, the court enters the following order and it is hereby ordered, adjudged and decreed as follows:

1. In accordance with the attached opinion, the motion for partial summary judgment filed on behalf of Patriot Pumping & Laser Screeding, LTD. is hereby granted.

2. The Prothonotary of Lawrence County is directed to enter summary judgment in favor of Patriot Concrete Pumping & Laser Screeding, LTD. t/d/b/a Patriot Concrete Pumping, LTD. on all claims filed by the plaintiff GEM Building Contractors and Developers, Inc. against those defendants only.

3. All claims asserted against Patriot Concrete Pumping & Laser Screeding, LTD. t/d/b/a Patriot Concrete Pumping LTD. are dismissed with prejudice.

4. The prothonotary is directed to serve a copy of this order of court and opinion upon counsel of record, Christopher P. Sketell, Esquire and Paul R. Robinson, Esquire.